582

City National Bank and Trust Company of Chicago, as Trustee and Guardian of the Estate of Arthur W. Sewell and John W. Sewell, Minors, Appellee, v. Arthur Sewell.
In re Earl B. Dickerson, Next Friend of Arthur W. Sewell and John W. Sewell, Minors, and Edward H. Morris and James B. Cashin, Appellants.

Gen. No. 40,503.

Opinion filed June 21, 1939.
Rehearing denied July 3, 1939.

EDWARD H. MORRIS and JAMES B. CASHIN, both of Chicago, for appellants.

NASH, AHERN, McDERMOTT, McNALLY & KILEY, of Chicago, for appellee; MICHAEL J. AHERN and MARTIN J. McNALLY, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

An order was entered in the superior court denying to Earl B. Dickerson, Edward H. Morris and James B. Cashin any fees as against the estate of the minors, Arthur W. Sewell and John W. Sewell, and also denying the petition of said petitioners for a change of venue and also from an order fixing the fees of the master in chancery to whom the cause was referred. From these orders and the decree entered, this appeal is taken.

The decree appealed from overrules the exceptions of the said Dickerson, Morris and Cashin to the report of the master denying the claim of the said Dickerson for compensation for services rendered as next friend of Arthur W. Sewell and John W. Sewell, minors, and the claim of Edward H. Morris and James B. Cashin for compensation for their services as attorneys for the said next friend in certain litigation engaged in and by the said minors in the superior court of Cook county, Illinois and the Supreme Court of Illinois. The decree appealed from sustains the objections of the guardian of the said minors and fixes the fees of the master in the sum of $3,500 and also an additional sum of approximately $500, and taxes the said sums as costs against the said Earl B. Dickerson, Edward H. Morris and James B. Cashin. The claim herein was instituted by Earl B. Dickerson, as next friend of said minors,

and Edward H. Morris and James B. Cashin for fees as attorneys for services rendered Arthur W. Sewell and John W. Sewell. The claims for fees were instituted by a petition filed by the three petitioners in a chancery proceeding originally brought by Dickerson, next friend of the minors, for the purpose of ascertaining what interest, if any, Arthur Sewell, their father, had in the property, he having acted as the guardian of the minors' estate, and asked for an accounting. The claim of Dickerson is for services rendered as next friend in that proceeding, and that of Morris and Cashin for legal services performed as attorney for the next friend. Dickerson's claimed fee was for $5,000 and that of Morris and Cashin was for $50,000, and the petition asks that payment and satisfaction of the claims are sought from the assets held by the respondent City National Bank & Trust Company, as trustee, by appointment under a prior decree of the superior court rendered in the aforesaid proceeding adjudicating the father had a curtesy estate in the minors' property, and as guardian of the estate of the minors. No question of jurisdiction is raised.

The decree of the chancellor here appealed from embraces only the claims of the petitioners for fees and was entered upon the report of the master finding and recommending that none of the petitioners is entitled to any compensation whatsoever. The decree approved and confirmed the findings of the master, dismissed the petition for want of equity and taxed the master's fees and costs one-half against the petitioners and the other half against the City National Bank & Trust Company.

The pleading of the petitioners was a petition setting forth in general the services claimed to have been rendered by them in the proceeding heretofore described. That petition contained no prayer that the trustee or the guardian of the minors' estate answer or otherwise plead to it. The petitioners did not ask

the entry of the rule upon the trustee or guardian to answer the petition, nor did the trustee ask that they be permitted to file an answer, nor did the court direct that an answer be filed, so no issue was made, nor does the pleading throw any light on what the defense might be.

The theory of the petitioners is that the court below was in error in overruling the exceptions of said petitioners to the master's report which found among other things that they were not entitled to any compensation whatever for services they rendered Arthur W. Sewell and John W. Sewell, minors, in certain litigation in the superior court of Cook county and the Supreme Court of Illinois; that the court below was also in error in sustaining the objections of the City National Bank & Trust Company and assessing the master's fees of $3,500 and other costs of approximately $500 against the petitioners.

Petitioners further contend that the trial judge was prejudiced against them and each of them; that a petition for a change of venue in due and proper form was signed and sworn to by petitioners, and in ample and proper time was presented to said court, but that the same was improperly and erroneously denied. It is further contended that the court below was in error in fixing the master's fees in the sum of $3,500 and assessing the same as well as all other costs against the petitioners. The petitioners had filed objections to the fees and charges of the master, claiming that the fees and charges of the master were excessive and exorbitant. When the master was a witness in his own behalf upon the hearing upon his fees and charges and direct examination of him had been completed, the petitioners attempted to and requested that the master cross-examine, but the court would not permit any cross-examination of the master after he had testified in chief concerning his fees.

The theory of the respondents, advanced in this court for the first time, is that the petitioners Dickerson, Morris and Cashin are not equitably or legally entitled to any fees or compensation whatsoever.

On the hearing of the petition before the master for attorney's fees, as before stated, no answer was filed which would indicate any restriction of the evidence to any issue that was made, so we are not aided in that regard in our consideration of the matter. Much evidence was heard and necessarily the petitioner was required to put in much of the evidence in detail as to the work which he had performed in order to earn the claimed fees. To set forth this evidence in detail would unnecessarily extend this opinion to undue length, so we shall set out the evidence as briefly as possible.

The evidence shows that Dickerson acted as the next friend to the minors and that Morris and Cashin were his attorneys.

It is claimed by the trustee and now guardian of the estate of the minors, City National Bank & Trust Company of Chicago, that the petitioners are not entitled to any compensation because they instituted the proceeding in which their services were performed to establish an interest for Arthur Sewell adverse to the interest of the minors whom they purported to represent.

The record of that suit shows that the proceeding was commenced for the purpose of ascertaining the interest of the father in the ground and properties from which the oil had been contracted to be sold, the purchasers of which had threatened to cease paying any more money for the oil until the question as to what the interests of the father and the minors were in this property and what their respective claims were on the income that was received from the sale of the oil. The minors also prayed for an accounting against their father who was their guardian. These measures were necessary and were so found.

It is next contended that a next friend cannot recover compensation for services in the absence of statutory authority.

While there is no statute in this State governing the actions of a next friend or the fixing of compensation, yet such questions have been before the courts for consideration in the past.

In the 31 Corpus Juris 1118, it is said: "A next friend or prochein ami is one who, without being regularly appointed guardian, acts for the benefit of an infant; one admitted to the court to prosecute for an infant. Such persons are considered as agents or officers of the court, their office being to represent the interest of the infant in the litigation. While technically speaking a next friend or prochein ami represents an infant plaintiff, and a guardian ad litem represents an infant defendant, there is little, if any, difference between their functions or powers. A next friend is in the nature of a guardian ad litem or an attorney by whom the suit is brought or defended in behalf of another." See also *Zazove v. Minneapolis St. P. & S. S. M. R. Co.*, 218 Ill. App. 534.

On the question as to whether or not a next friend can employ counsel, in the 31 Corpus Juris 1143, it is said:

"Although a next friend or guardian ad litem may employ an attorney to conduct the suit, he cannot make a contract for the payment of a specified compensation which will bind the infant or his estate, unless the agreement meets with the approval of the court; but the compensation of the attorney will be fixed by the court without regard to any such contract. There are cases holding that the next friend may employ counsel to represent him and agree on the compensation to be paid, subject, however, to the limitation that the fee agreed upon shall be reasonable, which is a question for the court." See also *Ellison v. Ward*, 294 Ill. App. 197.

It is next contended by the present guardian that the only way the attorneys could recover would be for necessaries furnished and that their services were not necessaries. This question has also been passed upon by this court in the case of *Haj v. American Bottle Co.*, 182 Ill. App. 636, in which this court said at p. 639:

"The minor and his next friend could each make a valid contract for necessaries and could agree to pay what the same were reasonably worth."

In *Burns v. Illinois Cent. R. Co.*, 190 Ill. App. 191, it was said:

"Attorney's services are necessaries for which a minor, or his next friend, may make a binding agreement to pay a reasonable compensation."

In *Baker v. Baker*, 202 Ill. 595, it is evident that the Supreme Court intended that services rendered by a next friend and his attorneys should be compensated for in proper cases. The court in that case said at p. 621: "It is the duty of the court to see that he makes all proper defenses. (*Peak v. Pricer,* 21 Ill. 164.) He must act under the directions of the court. (*Stunz v. Stunz,* 131 Ill. 210.) It must therefore be presumed that the chancellor had knowledge of the services rendered by Healey and the reasonable value of such services. He could, in the exercise of his legal discretion, make the allowance, and in the absence of evidence tending to show an abuse of that discretion we cannot say the allowance was unreasonable."

As before stated, inasmuch as the litigation for which these fees are claimed was before several courts of this county as well as the Supreme Court of Illinois, and neither the opposing counsel nor the courts having raised any question that the minors were properly represented, we must presume that the duties which are being performed for these minors by these petitioners were not only necessary, but also that such duties were being properly performed. As to the alleged improper action of the guardian Sewell in the misappropriation of funds, we do not see how his attor-

neys would be chargeable therewith unless they know-ingly joined therein.

When this case was referred to a master to hear the petition of Dickerson, Morris and Cashin for fees, the master made a finding that no fees could be recovered, to which finding objections and exceptions were taken by both sides to the controversy and when the master's report was presented to the court a petition in proper form was filed asking for a change of venue.

The application for a change of venue was in proper form, but we are precluded from considering it by the action of the petitioners. When this cause came before this court it was presented on its merits by briefs and abstracts, and by presenting it on its merits, this amounted to a waiver of any error that may have been made by denial of the application for change of venue. As was said in *Kerner v. Peterson*, 368 Ill. 59, at p. 81:

"Appellant has argued two points in her brief which we will not consider. She urges that she should have been allowed a change of venue, and that the Attorney General has wrongfully allowed private persons to prosecute this suit in his name. She, nevertheless, asks that we consider the case on the merits. This amounts to a waiver of both points, because if either were well taken a consideration of the merits would be unnecessary." The action of the court in denying the change of venue will not be further considered.

It is contended by defendant-appellee that the claim for fees is too high. Several members of the Chicago Bar made estimates as to the amount which should be allowed for such services and their estimates varied from $50,000 to $60,000, but nowhere in the record has it been pointed out the amount of time consumed in performing these services. One of the necessary elements in establishing a lawyer's fee is the amount of time consumed as well as the actual work involved, also it is necessary to know the nature of the work, the skill required, the result obtained and the intricacies of the questions involved. The time involved is one of

the important elements when fees are being considered by a reviewing court when determining whether the fee charged is a reasonable one. Courts do not desire to deprive a lawyer of an honestly earned fee for services which he has performed and to which he is entitled as compensation under the law. In this case while we think the petitioners are entitled to reasonable fees for services which they have performed, we also think that, after answers have been filed to the petition so an issue is made, additional evidence supporting their claim should be submitted to the court and a finding made by the court as to the fees earned, based on the actual number of days that were necessarily consumed in doing the work as well as the other elements involved.

Objections were filed by petitioners to the master's fees. In his first report the master asked for a total of $5,174.65 as his fees and on objections the court ordered a bill of particulars from the master and properly had him appear before the court and the court reduced the amount asked for master's fees to $3,500. There is no finding of fact by the court, however, which would permit us to determine whether or not the amount arrived at was justified as based on the time consumed by the master in this case. The master made a report showing that he consumed 755 hours, which would be approximately 151 days of five hours each, or about one-half year. The master also claimed having read the law contained in many cases decided in this and other jurisdictions, etc., for which he should be paid. Such reading was unnecessary. Masters' fees are based on the provisions as set forth in the statute and should be allowed in pursuance of the same.

As was said in *Kerner v. Peterson,* 368 Ill. 59, at p. 82: "The master was allowed $500 for clerk hire, and $875 for taking and reporting testimony. The master certified that he devoted seventy-five days to a consideration of the case. The master's position and responsibility are inferior to those of the chancellor

and his daily compensation should not be equal to or exceed the chancellor's compensation when reduced· to a *per diem* basis. (*Klekamp v. Klekamp*, 275 Ill. 98.) The chancellor, in fixing the master's fees, should determine the actual number of days reasonably necessary for the master to prepare a report and familiarize himself with the facts and the law, and the number of days allowed should not be so excessive as to render nugatory the restrictions on the *per diem* allowance. (*Herpich v. Williams*, 300 Ill. 540.) A consideration of this case should not require seventy-five days. The record consists of approximately 2500 pages and the briefs and arguments filed by the parties in this court total 484 pages, and appellant says that she furnished the master with briefs and arguments almost identical with those furnished this court. The compensation was determined at the rate of $80 per day, which is far in excess of the chancellor's salary figured on a *per diem* basis. The master's fees were grossly excessive.

"The decree of the circuit court will be reversed and the cause remanded. . . ."

In the instant case the number of pages contained in the record are considerably less than the number of pages contained in the record in the *Kerner v. Peterson* case, *supra,* and the charges allowed in the instant case are considerably more than in that case. Regarding the attorneys' fees as well as those of the master, the court should have made a finding as to the number of days which were necessarily consumed in doing the work and then should have made an allowance per day as would reasonably compensate the master and the attorneys' for the services which were necessarily and actually performed.

For the reasons herein given the decree of the superior court is reversed and the cause is remanded with directions to place the cause at issue by appropriate pleadings and give further consideration to the taking of such proof as may be necessary, both as to

attorneys' fees, next friend's fees and master's fees, based on the amount of time consumed and what would be considered as a reasonable fee for each of them for the work done and to make an allowance to the master, to the solicitors, and to the next friend, to reasonably compensate them for the work which was necessarily done by each.

*Decree reversed and cause remanded with directions.*

HEBEL and BURKE, JJ., concur.