(No. 49861 )

PHYLLIS FIORITO *et al.* v. THEODORE A. JONES, Director of Revenue, *et al.*, Appellants.—(David P. Schippers *et al.*, Appellees.)

*Opinion filed March 23, 1978.—Supplemental opinion filed on denial of rehearing July 14, 1978.*

78

CLARK and KLUCZYNSKI, JJ., took no part.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Stephen R. Swofford, Assistant Attorneys General, of counsel), for appellants.

David P. Schippers and Samuel J. Betar, of Chicago, *pro se,* appellees.

Edward A. Berman, Ltd., and Lewis W. Schlifkin, of Chicago, *pro se,* appellees.

Payne & Cooke, of Chicago (Philip J. Rock, of Rock, Fusco, Heneghan & Rachman, of counsel), *pro se,* appellees.

Taussig, Wexler and Shaw, Ltd., and James C. Renzino, of Chicago, *pro se,* appellees.

Cornelius J. Harrington, Jr., and John P. Sullivan, of Chicago, for appellee American National Bank and Trust Company of Chicago and *pro se.*

Defrees & Fiske, of Chicago (Edward J. Griffin and Gary Schuman, of counsel), *pro se,* appellees.

MR. JUSTICE MORAN delivered the opinion of the court:

The defendant, Theodore Jones, Director of Revenue for the State of Illinois (State), appeals from the orders of the circuit court of Cook County which awarded final attorney and trustee fees in this, a taxpayer class action

suit. The case has pended in the circuit court for more than 10 years and has been appealed on three previous occasions. The instant appeal was transferred to this court pursuant to Supreme Court Rule 302(b) (58 Ill. 2d R. 302(b)).

On July 25, 1967, plaintiff, Phyllis Fiorito, by her attorneys, David P. Schippers and Samuel J. Betar, instituted suit on behalf of herself and all others engaged in the business of graphic arts, challenging the constitutionality of the 1967 amendments to the Service Use Tax Act and the Service Occupation Tax Act (Ill. Rev. Stat. 1967, ch. 120, pars. 439.32, 439.33, 439.102, 439.103). The complaint sought an injunction against the Director of Revenue enjoining the collection of taxes thereunder.

The 1967 amendments increased the service occupation and use tax rates, but narrowed the class of individuals subject to the tax. The amendments imposed taxes on the gross receipts of only four groups of business entities, *i.e.*, businesses which (1) sold specially made tools or equipment; (2) provided graphic art and related services; (3) repaired, renovated and reconditioned tangible personal property; or (4) sold prescription drugs or medicines. On July 27, 1967, a temporary injunction was issued ordering the State to impound all taxes collected pursuant to the amendments and to hold such taxes in a separate fund pending final disposition of the case.

Shortly thereafter, S. Hersenson and Carol Grier, by their respective attorneys, Louis W. Schlifkin and Edward A. Berman, intervened in the suit, individually and as representatives of all buyers who purchased goods and services from servicemen enumerated in the acts. They alleged that their class was a proper and necessary party to the action inasmuch as members of their class actually bore the burden of the challenged taxes.

On November 15, 1967, Robert H. Kochman and Tool Equipment Research N Design, Inc., by their attor-

neys, James C. Renzino and Samuel H. Solomon, intervened. Kochman represented the class of businesses which repaired tangible personal property, and Tool Research represented the class of businesses which sold specially made tools and equipment. These parties took the position that each of the four classes taxed under the amended acts had to be represented in the class action.

The final party granted leave to intervene was R. Bertram Cooke. Cooke, through his attorney, Stanley W. Cooke of the law firm of Payne & Cooke, represented those who purchased from servicemen and who, in addition to having paid the State tax, had paid a corresponding tax under the municipal and county service occupation tax acts (Ill. Rev. Stat. 1967, ch. 24, par. 8—11—5, and ch. 34, par. 409.2). The latter two acts had not been challenged by the original complaint, although the taxes collected pursuant thereto were being held in the protest fund.

On December 6, 1967, the trial court's final decree ruled the 1967 amendments invalid and a permanent injunction was entered enjoining the defendant from collecting the taxes thereunder. On appeal, three associations of tool and die makers (associations), represented by the law firm of DeFrees and Fiske, were granted leave to appear and file a brief as *amici curiae*. (The associations were also permitted to file an *amici curiae* brief in a later appeal.) On March 28, 1968, this court affirmed the trial court's judgment and ordered refunds to all class members who actually bore the burden of the tax.

On January 30, 1969, the American National Bank and Trust Company of Chicago (trustee) was appointed to act as the fiduciary and depository of the protest fund and to assist in the administration of the refund program, subject to the trial court's orders. The trustee received from the Treasurer of the State of Illinois approximately $34 million. Two million dollars of that amount was the

statutory interest accrued to the date of payment, and another $10 million represented the tax due the State under the pre-1967 tax acts. Attorneys Cornelius J. Harrington and John P. Sullivan (trustee's attorneys) were thereafter appointed to serve as legal counsel to the trustee.

Excluding the report of proceedings, papers concerning the verification and payment of claims constitute approximately two-thirds of the 3,664-page common law record of this case. The trustee processed nearly 46,000 claims involving more than 400,000 transactions. Through its attorneys, the trustee filed 418 petitions seeking instructions from the court as to the payment or denial of claims. Many of the claims were disallowed, and some were contested, thereby necessitating further hearings. At a minimum, more than 80 separate court hearings were conducted.

Approximately $7 million was refunded to the class members. All valid claims submitted were paid in full along with statutory interest accrued to the date of payment. By virtue of the trustee's prudent investment and management skills, and despite the payment of $26 million to the State during the interim, the protest fund earned over $10 million, thereby bringing the total fund to more than $44.5 million.

At various times following this court's decision in *Fiorito v. Jones* (1968), 39 Ill. 2d 531, plaintiffs' attorneys filed petitions seeking interim fees. These petitions outlined the history of the case to date, described the attorneys' roles, and discussed the significance of their participation in the prosecution of the matter.

The attorneys for *amici curiae* also filed a petition in the trial court, said petition entitled "suggestions of Amici Curiae concerning their contribution to the resolution of the issues in this case." The petition alleged that, at the time *amici* were allowed to file their original brief, they

informed this court that they would not petition the trial court for fees in the event of a favorable decision but would accept any compensation the trial court saw fit to award them for their contribution. The *amici* attorneys, therefore, outlined for the trial court the significance of their participation.

The trustee and its attorneys filed their first petition for fees in December of 1971. This petition set forth the accomplishments of the trustee and its attorneys and the total number of hours expended by the trustee's attorneys. The petition requested an interim trustee fee for services performed to date and a reasonable fee for the trustee's attorneys.

Following a December 22, 1971, hearing, the trial court entered its first order awarding interim fees to the plaintiffs' attorneys, the trustee and its attorneys, and the attorneys for *amici curiae.*

At this hearing, attorneys for *amici curiae* indicated to the court that they had received a retainer fee of $5,000 from their clients. The trial court awarded the *amici* attorneys an interim fee of $60,000, less the amount they had received from their clients. None of the parties objected.

A second interim fee award was made to the trustee on December 22, 1972. On June 21, 1974, interim fees were again awarded to all parties, including *amici curiae.* The final interim fee award was made on December 12, 1975, at which time no additional fees were awarded to the attorneys for *amici curiae.* At no time did the State object to the amount of the interim fees awarded.

On December 29, 1975, *amici curiae* filed a petition requesting additional interim fees. The State filed an answer opposing the petition and argued, among other things, that the request for additional fees was excessive, that the attorneys had been adequately paid by both their clients and the court, and that the attorneys had filed no

appearance in the case and represented no named party in the case. The attorneys for *amici* filed a reply to the State's answer and also amended their petition by setting forth the approximate number of hours expended on the case. The trial court did not award further interim fees to the *amici*.

The total amount of interim fees awarded were as follows: Schippers and Betar, $1,025,000; Schlifkin and Berman, $1,025,000; Payne and Cooke, $290,000; Renzino and Solomon, $225,000; trustee, $975,000; trustee's attorneys, $760,000; DeFrees and Fiske (*amici curiae*), $75,000.

During November of 1976, the trial court conducted a series of hearings on the parties' petitions for final fees. In their joint petition, which was later introduced into evidence, Schippers and Betar and Schlifkin and Berman summarized the history of the case, the complexities and difficulties encountered, and the benefits bestowed upon the class members. The petition also set forth and discussed a number of factors to be considered by the court in making its award. The other two groups of attorneys also filed petitions.

The trustee and its attorneys also petitioned for final fees. Their petitions recapitulated the problems of administering the fund and in refunding the claims. The trustee's attorneys estimated that they had expended 9,865 hours in their representation of the trustee. The trustee requested $500,000 as a final fee, and its attorneys requested a reasonable final fee plus costs.

The State filed an answer opposing the further award of attorneys' fees, but did not specifically object to the payment of further fees to the trustee. The State's answer asserted that the additional requests by the attorneys were excessive, extravagant, and not justified by the circumstances of the case. The State argued that the attorneys had been generously paid and that the remaining funds

should be paid to the State of Illinois.

Plaintiffs' attorneys introduced into evidence the transcribed testimony of three expert witnesses, given in Hradek v. Korshak (Gen. No. 66CH7491), a Cook County circuit court case which involved the award of attorney's fees in a similar but unrelated taxpayer class action. The State adopted the objections contained in the transcript of proceedings in the Hradek case as and for their objections in the instant case.

Also, two members of the bar, Thomas A. Foran and Jerome H. Torshen, testified as expert witnesses for plaintiffs' attorneys. They outlined the factors that were to be considered by the court in awarding fees, and concluded that, with these factors applied to the case, an award of 20% to 25% of the total fund would constitute a reasonable overall sum for all of the plaintiffs' attorneys. On cross-examination by the State, both experts testified that, at the time this case was filed, lawyers did not make it a practice of keeping time records in cases of this nature.

At a later hearing, each group of plaintiffs' attorneys testified. Samuel Betar discussed, among other things, the criteria which he believed were applicable to the case. He concluded that, while an award of 20% to 25% would be reasonable, a total fee of 15% for all attorneys would be acceptable. Edward Berman testified similarly. James C. Renzino testified as to his own personal contribution to the case and to that of his late colleague, Samuel Solomon. Renzino adopted the testimony of the previous witnesses. Stanley Cooke introduced his fee petition into evidence and testified that 20% to 25% of the fund attributable to the county and municipal service occupation tax acts, which he had successfully challenged, would constitute a reasonable fee for himself.

On cross-examination by the State, each of the plaintiffs' attorneys who testified stated that he had not kept time records. (One of plaintiff's attorneys testified

that, at the time this case commenced, there was no requirement for time records to be kept in this type of class action suit. Several others testified that it was not a customary practice to keep time records in cases of this nature.) The attorneys asserted that it would be impossible to reconstruct or estimate the amount of time expended. The State offered no evidence or argument to rebut the reasonableness of the fees requested by plaintiffs' attorneys but, instead, relied upon its general objection. The State did not contradict the attorneys' asserted inability to reconstruct time records.

Edward J. Griffin testified in behalf of the attorneys for *amici curiae* that, based on their contribution to the case and the number of hours expended, a total fee of $150,000 would constitute a reasonable award for their services.

During the course of the testimony, the trial court indicated that it would not award fees based on a percentage of the total fund, but would arrive at a reasonable figure based on the criteria outlined by the witnesses. In making the final award of attorneys' fees, the trial court indicated that it took all "the facts and circumstances of the case" into consideration. Specifically, the court noted that it considered (1) the testimony adduced in the case; (2) the benefits bestowed on the class; (3) the intricacy, novelty and complexity of the issues; (4) the general difficulty of the case; (5) the contingent nature of the case; (6) the public benefit of the action; (7) the need to provide an incentive so as to encourage other attorneys to prosecute similar actions; (8) the established skills and qualifications of counsel; (9) the fact that all valid claims submitted had been paid in full and with interest to date of payment; (10) the fact that the State of Illinois to date had received $26 million from the protest fund; (11) the fact that the case had "been pending for a great number of years"; and (12) the fact that, in the

court's judgment, "everyone involved in the case did a superior job." The trial court then awarded the following amounts as final fees: Schippers and Betar, $1,000,000; Schlifkin and Berman, $1,000,000; Payne and Cooke, $520,000; Renzino and Solomon, $125,000; DeFrees and Fiske (*amici curiae*), $30,000.

The totals of the fees awarded were as follows:

| | |
|---|---|
| Schippers and Betar | $2,025,000 |
| Schlifkin and Berman | 2,025,000 |
| Payne and Cooke | 810,000 |
| Renzino and Solomon | 350,000 |
| DeFrees and Fiske | 105,000 |

At a separate hearing, the trial court awarded the trustee and its attorneys final fees. Perry G. Callas, senior vice-president of the American National Bank and Trust Company of Chicago, testified in behalf of the trustee. Callas recapitulated the trustee's involvement in the case and the difficulties associated with administering the fund and refunding the claims. He indicated that the implementation of a refund program of this size was without precedent. Callas reiterated that, through the trustee's investment skills and despite the payment of over $26 million to the State during the administration of the fund, the fund earned over $10 million, and that the earnings covered all claims paid, plus practically all administration expenses, interim attorneys' fees, and trustee's fees. Callas concluded that, based on the work performed to date and the work to be done in completing the final accounting, $500,000 would constitute a reasonable final fee. The State indicated no objection to the trustee's request and offered no contrary testimony as to the reasonable value of the services performed. The State, in fact, commended the trustee's performance.

Of the trustee's attorneys, Harrington requested a final fee of $200,000 plus costs, and Sullivan requested a final fee of $100,000. Again, the State offered no evidence

to negate the reasonableness of the requests.

The court entered an order awarding the trustee a final fee of $775,000, $200,00 of that amount, plus costs, to be paid to Harrington, who was to remain in the case through the final accounting, and $75,000 to be paid to Sullivan, who was relieved of his duties as attorney for the trustee. With these sums, the total amounts awarded to the trustee and its attorneys were as follows:

| | |
|---|---|
| Trustee | $1,475,000 |
| Harrington and Sullivan | 1,035,000 |
| | plus costs. |

The State claims that the fees awarded to plaintiffs' attorneys are excessive. It argues, as it did in the trial court, that any further award of fees is unwarranted and unjustified under the facts and circumstances of this case. Over this general objection, the trial court determined that an additional award of $2,645,000 in attorneys' fees was proper.

The amount of attorney fees awarded in class actions has sparked much criticism in recent years. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 488.) In *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, a case decided over seven years after the commencement of this action, the court reviewed the method by which the amount of class action attorney fees had been determined.

Because, in a class action, the right to attorneys' fees is contingent upon ultimate success and upon the presence of a fund from which fees can be paid, it had been a custom and practice to equate class actions with the typical contingent-fee case and to award fees based upon a percentage of the fund. The percentage awarded in cases of the nature herein varied with the circumstances of those cases. In *Flynn,* this court noted that, although class action attorney's fees are contingent upon success, a class action is not a typical contingent-fee case because the amount of the fee is not the result of a voluntary agreement between

the client and his attorney. Rather, the fee is an amount taken, by order of the court, from money that belongs to others, and the amount is dependent upon the exercise of the court's sound discretion.

Prior to *Flynn,* this court and the appellate court had never discussed the appropriateness of awarding class action fees on the basis of a percentage of the fund. The courts had, however, discussed the various factors that the trial court should have considered when called upon to determine the reasonable value of an attorney's services. Among these factors, the amount of time expended had always been considered an important criterion. (See *McMannomy v. Chicago, Danville & Vincennes R.R. Co.* (1897), 167 Ill. 497, 504; *Louisville, New Albany & Chicago Ry. Co. v. Wallace* (1891), 136 Ill. 87, 93; *Hofing v. Willis* (1967), 83 Ill. App. 2d 384; *Mueller v. Sloan* (1961), 33 Ill. App. 2d 205; *McKay v. Wilhelm* (1942), 316 Ill. App. 397, 402-03; *City National Bank & Trust Co. v. Sewell* (1939), 300 Ill. App. 582, 589-90.

"Time being the lawyer's sole expendable asset, the economic worth of his ability, training and experience is determined by the use of the hours available for the practice of his profession." *Mueller v. Sloan* (1961), 33 Ill. App. 2d 205, 207.

Recognizing the court's duty to safeguard the interest of others, particularly that of the unnamed class members, the *Flynn* court reemphasized the importance of the time element in determining the reasonable value of the services performed. The court held that "the time expended \*\*\* [by the attorney] is not to be relegated to a secondary or minor position \*\*\*." (*Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 67.) Because of the importance of the time element, it is incumbent upon the attorney to keep detailed time records during the course of the litigation.

Later, in *Leader v. Cullerton* (1976), 62 Ill. 2d 483, the court expounded further on the importance of the

time expended as a means of determining the reasonable value of the attorney's services. The court held that, although time expended is not the sole criterion, it should be considered as the starting point for the computation of fees. (62 Ill. 2d 483, 488.) By using time as the initial bench mark, the *Leader* court adopted an approach used by a majority of the Federal appellate courts. *King v. Greenblatt* (1st Cir. 1977), 560 F.2d 1024; *City of Detroit v. Grinnell Corp.* (2d Cir. 1977), 560 F.2d 1093; *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, *cert. denied* (1975), 423 U.S. 864, 46 L. Ed. 2d 93, 96 S. Ct. 124; *Johnson v. Georgia Highway Express, Inc.* (5th Cir. 1974), 488 F.2d 714; *Brandenburger v. Thompson* (9th Cir. 1974), 494 F.2d 885, 890 n.7; *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161 *(Lindy I)*.

Pursuant to *Leader,* the trial court is not only to inquire into the total hours expended which benefited the unnamed class members, but also to determine in what manner the time was expended *(e.g.,* court appearance, research, writing, discovery) and by whom *(e.g.,* senior or junior partners, associates or law clerks). Hours which do not benefit the class members are to be disallowed. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1976), 540 F.2d 102, 112 *(Lindy II)*; *In re Equity Funding Corp. of America Securities Litigation* (C.D. Cal. 1977), 438 F. Supp. 1303, 1328; *In re Penn Central Securities Litigation* (E.D. Pa. 1976), 416 F. Supp. 907, 917-18.) The court is obliged, also, to carefully weigh, according to its own knowledge, experience and expertise, whether the hours claimed and the tasks performed are reasonable in relationship to the time required by other attorneys to complete similar activities. In the event the court finds the hours claimed are the result of unnecessary, duplicative work efforts or inefficiency, it must reduce the excessive hours claimed. *Leader*

*v. Cullerton* (1976), 62 Ill. 2d 483, 490-91; *Johnson v. Georgia Highway Express, Inc.* (5th Cir. 1974), 488 F.2d 714, 717; *In re Penn Central Securities Litigation* (E.D. Pa. 1976), 416 F. Supp. 907, 916-17.

When the court has determined the number of hours which benefit the class, it must then value the services by fixing a reasonable hourly rate for each attorney, taking into account the nature of the services performed, the complexity of the undertaking and the hourly fee charged for similar services by attorneys with similar skills and qualifications. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 491-92.) The court may award hourly rates that differ according to the categories of services performed. (*Lindy 1* (3d Cir. 1973), 487 F.2d 161, 167; *Johnson v. Georgia Highway Express, Inc.* (5th Cir. 1974), 488 F.2d 714, 717; *Liebman v. J. W. Petersen Coal & Oil Co.* (N.D. Ill. 1974), 63 F.R.D. 684, 691.) The appropriate hourly rates are then multiplied by the hours expended. The product of this multiplication is referred to as the "lodestar" computation. *Lindy 1* (3d Cir. 1973), 487 F.2d 161, 168.

As noted above, an attorney's compensation in class actions is contingent upon his success.

> "No one expects a lawyer to give his services at bargain rates in a civil matter on behalf of a client who is not impecunious. No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended. Yet unless time spent and skills displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute, and

that there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation." (*Cherner v. Transitron Electroic Corp.* (D. Mass. 1963), 221 F. Supp. 55, 61.)

The lodestar computation is, therefore, adjusted to account for the contingent nature of the undertaking and the benefits conferred upon the class. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 492.) If the trial court, in the exercise of its discretion, determines that an amount over and above the lodestar computation is warranted, it may increase the lodestar computation or a portion thereof by applying a weighted multiplier commensurate with the value which the court attributes to the above two qualitative factors. See *In re Equity Funding Corp. of America Securities Litigation* (C.D. Cal. 1977), 438 F. Supp. 1303, 1330, 1336, and *In re Penn Central Securities Litigation* (E.D. Pa. 1976), 416 F. Supp. 907, 922 & n.43, wherein the courts refused to increase that portion of the lodestar computation which represented hours expended administering the claims after the settlement was attained.

In determining the weighted multiplier to be attributed to the contingent nature of the undertaking, the court must examine the probability or likelihood of plaintiff's success at the time the suit was filed. In some cases, the defendant's liability may have been virtually certain because of some prior judgment or decree against the defendant in an action brought by the government or another private party. In such cases, a relatively small multiplier or no multiplier at all should be awarded for the contingent nature of the undertaking. In other cases, the defendant's liability may actually have been quite remote. In this latter situation, the court, in making its determination, must evaluate the burden of proof which the plaintiff has had to overcome in order to succeed, the legal and

factual complexity of the issues, and the difficulty encountered in proving damages. An objective measure of the amount of risk assumed by the attorney is the number of *necessary* hours expended or out-of-pocket cost incurred prior to the guarantee of remuneration.

There are no set guidelines for determining what value should be attributed to these considerations. Each case must be analyzed separately, keeping in mind that "the relevant issue is the contingent nature of the particular case involved, and not the risk factor in class actions generally." *In re Penn Central Securities Litigation* (E.D. Pa. 1976), 416 F. Supp. 907, 914.

The value of the weighted multiplier should also reflect the benefits conferred upon the class. When the attorney succeeds in recovering the total claims of the class members, a greater multiplier may be warranted than when the recovery covers only a fraction of the class members' claims or potential recovery. In the latter situation, each dollar awarded in attorney fees would further reduce the recovery of the class members. In making its determination, the court may also consider the noneconomic benefits accruing to the class and to the public at large. *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 442-43.

If, upon evaluating the above factors, the trial court finds that an increased award is warranted under the circumstances, it should identify those factors which warrant the increase, state the value of the multiplier being used, and give a brief statement of the reasons therefor. See *Lindy II* (3d Cir. 1976), 540 F.2d 102, 117-18.

In *Leader,* the court used a factor of three. Examination of the numerous Federal cases which employed the "time expended" approach, reveals that, in the vast majority of cases, the maximum weighted multiplier employed has been three. We believe that, in any particular case, trebling the lodestar computation should more than adequately compensate counsel for the risk incurred and

for the amount of benefits conferred upon the class. A trial court should rarely employ a weighted multiplier greater than three, and, in most instances, should not hesitate to employ a lesser number or fraction thereof.

Turning to the facts of the instant case, the State requests that we review the trial court's award and set aside that amount of the award which we deem excessive under the circumstances. The State argues that the amount of time expended prior to the guarantee of remuneration was minimal, that the bulk of the work performed and time expended in refunding the claims was shouldered by the trustee and its attorneys, that there was substantial duplication of work effort by the plaintiffs' attorneys, and that the plaintiffs' attorneys could not have expended the amount of time which would justify the awarding of $5,210,000 in fees. The plaintiffs' attorneys, on the other hand, contend that the State has waived any objection to the amount of fees awarded by having failed to advance these arguments in the trial court and by having failed to offer evidence to rebut the reasonableness of the fees awarded.

In response to the arguments of plaintiffs' counsel, the record reveals that the State was precluded from raising its arguments presented here, for those arguments depended upon the presence of time records which plaintiffs' attorneys testified they could not produce. The burden of proving the reasonable value of the services performed obviously rested with the plaintiffs' attorneys, not with the State. It was incumbent upon the attorneys to submit to the trial court evidence from which it could make a reasoned decision in accordance with the applicable law. Until time records were submitted and an hourly rate determined, the burden did not shift to the State to rebut the reasonableness of the fees awarded.

Plaintiffs' attorneys argue, however, that the time-expended analysis announced in *Leader* and *Flynn* is

inapplicable to cases commenced prior to those decisions, and that it would be inequitable to require the attorneys, at this point in time, to reconstruct their hours. We are not persuaded by the attorneys' assertion that they did not keep time records because it had not been the custom and practice to do so in cases of this nature (*cf. Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 67), when, as earlier noted, time expended has always been considered an important factor in determining the reasonable value of an attorney's services. While there is some language in *Leader* to the effect that in cases prior to *Flynn* the lack of available information might necessitate the use of a percentage computation, it is clear that the time-expended analysis in *Leader* and *Flynn* was not to be limited to future cases. It is to be emphasized that in both *Leader* and *Flynn* the attorneys furnished the amount of time expended, and the court reviewed the awards in light thereof.

Our review of the record convinces us that an objective determination of the value of the services performed cannot be made without an accounting of the time expended to serve as a starting point for the computation. In seeking fees, the attorneys should have reconstructed their hours from whatever information was available: date books, office records, court documents, etc. Although we are aware of the attorneys' testimony asserting their inability to reconstruct their hours, it is clear from the record that they made no attempt to do so, and the trial court did not impose any such requirement upon them. The plaintiffs' attorneys must, therefore, reconstruct and itemize the total number of hours expended. When the attorneys have submitted the reconstruction of their time records, the trial court should, in accordance with the guidelines announced herein, make its determination as to the reasonable value of the attorneys' services.

The State next contends that, based on the evidence submitted by the trustee and its attorneys, the trial court did not have sufficient information from which it could render a decision as to the value of the services of the trustee and its attorneys. As with the plaintiffs' attorneys, the trustee and its attorneys had the burden of proving the reasonable value of their services. Unlike plaintiffs' attorneys, however, the trustee's attorneys were entitled to compensation only for the actual time expended. Although the attorneys indicated to the court their total hours expended in representing the trustee, there was no evidence as to how or by whom these hours were expended. Neither was there evidence regarding the reasonable hourly rate charged by attorneys for performing legal services of similar character. The trial court merely awarded the trustee's attorneys a fixed, lump sum. While the court is not bound by the customary hourly rate charged by attorneys for performing legal services similar in character (*cf. Golstein v. Handley* (1945), 390 Ill. 118, 125-26), such evidence should serve as an initial basis for determining the reasonable value of the court-appointed officer's services.

Although there was some testimony by the trustee that the administration of a refund program of this size and nature was without precedent, there was no evidence to show how the trustee arrived at the amount it submitted as a reasonable fee. The trustee merely requested a fee of $500,000 for the services performed, and the trial court awarded that amount. The trial court is not and should not be bound by the standards which the trustee may employ in computing fees charged private customers (*cf. Steele v. Ruprecht* (1909), 147 Ill. App. 646, 657-59), but such standards do provide some basis for making an objective determination as to the reasonable value of the service performed. Other factors relevant in determining the amount of the trustee's award are the

time, labor and skill required by the undertaking, the dispatch with which the work was conducted, the difficulty of the task, the extent of responsibility assumed, and the results obtained. In light of the complexity of the undertaking, the work involved, and the results obtained, it may be that here the amount awarded to the trustee was reasonable, but, because of the paucity of the evidence, such a finding on review would be pure conjecture. Without evidence as to how or upon what basis or standard the trustee computed its fee, and without evidence concerning the value of comparable services, we cannot objectively review the trial court's award to the trustee.

Finally, the State contends that the attorneys for *amici curiae* were not entitled to a final award of fees.

Three tool and die associations, represented by the law firm of DeFrees and Fiske, were, on two occasions, granted leave by this court to file a brief in each of two earlier appeals before this court. At the time leave was granted, the associations' memberships were included within the classes represented by the named class members. A review of the orders entered by this court shows that the associations were permitted, on those occasions, to appear in this court only for the purpose of submitting a brief on appeal. According to the record, the associations have never been granted leave to intervene as parties in this action. By definition, an *"amicus curiae"* is not a party to the action, but a friend of the court. As such, the sole function of an *amicus* is to advise or make suggestions to the court. *Bee Chemical Co. v. Service Coatings, Inc.* (1969), 116 Ill. App. 2d 217, 226.

At the hearing on their petition for fees, attorneys for *amici curiae* indicated to the trial court that they had informed this court that they would be willing to accept any award the trial court saw fit to make. In making this statement, the attorneys implied to the trial court that this court had authorized the awarding of fees. This alleged

authorization, however, is not borne out by the orders which this court entered. To the contrary, *amici* admit that they stated to this court that they would not petition the trial court for fees in the event of a favorable decision.

We recognize that *amici* have rendered valuable services, but these services were not performed at this court's request. Rather, they were performed at the request of the client associations. We are aware of no authority, and the attorneys for *amici* have cited none, which would authorize the award of fees under the circumstances presented here. Courts which have discussed the awarding of fees to attorneys appearing as or on behalf of *amicus curiae* have distinguished various situations from that presented here. In *In re Phi Fathers Educational Ass'n* (Mo. App. 1947), 203 S.W.2d 885, 887, wherein the court awarded fees for services rendered by an attorney at the request of the court, the court noted:

> "It is to be kept in mind that in sustaining the right to compensation, we are speaking only of an amicus curiae in the sense in which Mr. Gleick served in the case at bar, that is, as one appointed by the court itself to aid and advise the court in a case pending before it with respect to material matters about which the court is in doubt. What we have said has no reference to one who, while formally purporting to act as a friend of the court which grants him leave to appear and be heard, is actually representing a private client with a personal interest in the ultimate result which is reached. Such a person, while denominated an amicus curiae, actually occupies a position more nearly akin to that of an intervener except that he does not become a party to the proceeding so as to be bound by the judgment which is rendered therein. Nor even where he is appointed to aid and assist the court will an

amicus curiae be entitled to compensation if the purpose of his appointment is to vindicate the court's honor, as, for instance, where he is called upon to investigate whether fraud had been practiced upon the court. [Citation.] "

Accord, *Universal Oil Products Co. v. Root Refining Co.* (1946), 328 U.S. 575, 580-81, 90 L. Ed. 1447, 1452-53, 66 S. Ct. 1176, 1179; *In re Mortimer* (1976), 44 Ill. App. 3d 249, 251-52; *City of Kansas City v. Kindle* (Mo. 1969), 446 S.W.2d 807, 818-19.

Here, the attorneys for *amici curiae* represented private clients who had an interest in the outcome of the proceeding, and in such cases the attorney must look to his client for the payment of compensation. We find, therefore, that not only did the trial court err in awarding *amici* final fees, but it erred in awarding them interim fees.

Based on the foregoing, the orders awarding fees to the attorneys for *amici curiae* are reversed and the orders awarding final fees for the plaintiffs' attorneys, the trustee and the trustee's attorneys are vacated, and this cause is remanded for further proceedings in accordance with the views expressed in this opinion.

The judgment of the circuit court of Cook County is reversed in part and vacated in part, and the cause is remanded for further proceedings.

*Reversed in part and*
*vacated in part*
*and remanded.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

Supplemental Opinion on Denial of Rehearing

In their petition for rehearing, the associations, as *amici curiae,* object to the reversal of the trial court's orders which awarded interim and final fees to their

attorneys.

It is argued that the State sought relief only from the order awarding final attorneys' fees and that this court's scope of review was thereby limited. We call to the associations' attention Rule 366 (58 Ill. 2d R. 366(a)(5)), under which the reviewing court may, in its discretion and on such terms as it deems just, "give any judgment and make any order that ought to have been given or made *** that the case may require."

It is also argued that the interim orders were final and appealable (*People ex rel. Russel v. Illinois State Bank* (1924), 312 Ill. 613), and that, inasmuch as no appeal was taken, those orders cannot be challenged at this time.

Initially we note the record reveals no order by the trial court appointing the associations as *amici curiae*. By separate orders of this court, the associations were allowed to appear and file briefs as *amici curiae* in the two former appeals. Upon conclusion of those appeals in this court, the associations' status as *amici curiae* terminated.

Under the "common fund" doctrine, the trial court, in this case, had jurisdiction to award attorneys' fees only to those attorneys representing the plaintiff class. The associations' members were already members of the plaintiff class and, as such, were adequately represented. The associations, in and of themselves, were not parties to the action and, therefore, were not entitled to have their separate attorneys' fees paid from the fund. Accordingly, the trial court's interim and final orders allowing fees to the associations' attorneys were not merely voidable orders (and therefore subject to attack on direct appeal) but void orders, subject to attack at any time.

For these reasons, this petition for rehearing is denied.

CLARK and KLUCZYNSKI, JJ., took no part.