(No. 78132.—

# HELEN BRUNDIDGE *et al.*, Appellants, v. GLEN-DALE FEDERAL BANK, F.S.B., Appellee.

*Opinion filed November 22, 1995.*

Daniel A. Edelman, Cathleen M. Combs and James O. Latturner, of Edelman & Combs, and Lawrence Walner (James P. Arndt, of counsel), all of Chicago, for appellants.

Gerald L. Angst, of Sidley & Austin, of Chicago, for appellee.

Alvin D. Meyers and Steven J. Teplinsky, of Fagel & Haber, and James D. Holzhauer and Javier H. Rubinstein, of Mayer, Brown & Platt, all of Chicago, for *amicus curiae* Firemen's Annuity & Benefit Fund of Chicago.

JUSTICE McMORROW delivered the opinion of the court:

In this appeal we are asked to reconsider *Fiorito v. Jones* (1978), 72 Ill. 2d 73, and *Leader v. Cullerton* (1976), 62 Ill. 2d 483. In *Fiorito* and *Leader*, this court adopted the lodestar method for awarding attorney fees to plaintiffs' counsel in class action litigation where the plaintiffs' recovery results in the creation of a common fund from which attorney fees are awarded. The question presented is whether we should grant the trial court the discretion to award attorney fees based on a percentage of the common fund recovered in the class action suit.

## BACKGROUND

The pertinent facts are undisputed. In June 1991, plaintiff Helen Brundidge filed suit against the defendant, Glendale Federal Bank (the Bank). The complaint alleged that the Bank's methods of computing mortgage escrow accounts for the payment of residential real estate taxes were unfair and amounted to deceptive practices. The litigation was brought as a class action suit on behalf of all residential mortgage customers of the Bank who had been affected by the allegedly deceptive manner of computing mortgage escrow accounts.

In June 1992, plaintiff and the Bank entered into a settlement agreement pursuant to which the Bank agreed to refund to all of its customers the sums that represented overpayments they had made into their mortgage escrow accounts. The Bank further agreed to follow certain procedures in its future collection of customers' mortgage escrow payments. The agreement provided a right to plaintiff's counsel to monitor the Bank's implementation of the new procedures.

With regard to attorney fees, the agreement recited that the Bank would pay a set sum to plaintiff's counsel. The Bank also agreed not to oppose an additional attorney fee petition from plaintiff's attorneys. Thereafter plaintiff's lawyers filed a fee petition in which they requested that they be awarded a percentage of the amounts that the Bank would pay in refunds and interest to the plaintiff class members. The trial court denied the fee petition on the ground that this court rejected use of a percentage method when it adopted the lodestar method of awarding attorney fees in class action litigation in *Fiorito*, 72 Ill. 2d 73.

Plaintiff appealed from the trial court's ruling that disallowed a percentage award of attorney fees. The appellate court affirmed, relying on the precedent of *Fiorito*. (No. 1—92—3559 (unpublished order under Supreme Court Rule 23).) However, the appellate court noted several deficiencies in the lodestar method of awarding fees and suggested that this court reconsider the doctrine. We allowed the plaintiff's petition for leave to appeal. (145 Ill. 2d R. 315(a).) Because the propriety of the lodestar method was questioned in *Ryan v. City of Chicago* (1995), 274 Ill. App. 3d 913, we allowed the motion of one of the litigants in that case, Firemen's Annuity and Benefit Fund of Chicago, to file an *amicus curiae* brief in the instant appeal. The remaining litigant in *Ryan*, attorney Clinton A. Krislov, was permitted to file a response to Firemen's Fund's *amicus* brief.

## ANALYSIS

Illinois has long adhered to the general American rule that the prevailing party in a lawsuit must bear the costs of litigation, unless a statutory provision or an agreement between the parties allows the successful litigant to recover attorney fees and the expenses of suit. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 488; *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 437.) However, where the outcome of the litigation has created a common fund, this court has adopted the "common fund doctrine." (*Saltiel*, 85 Ill. 2d at 489-91; *Hamer*, 64 Ill. 2d at 437.) The common fund doctrine allows one who "creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." (*Swedish Hospital Corp. v. Shalala* (D.C. Cir. 1993), 1 F.3d 1261, 1265; see *Central R.R. & Banking Co. v. Pettus* (1885), 113 U.S. 116, 126-27, 28 L. Ed. 915, 918-19, 5 S. Ct. 387, 392-93.) The doctrine finds its source in the court's inherent equitable powers (*Sprague v. Ticonic National Bank* (1939), 307 U.S. 161, 167, 83 L. Ed. 1184, 1187, 59 S. Ct. 777, 780) and is founded on the rationale that successful litigants would be unjustly enriched if their attorneys were not compensated from the common fund created for the litigants' benefit (*Mills v. Electric Auto-Lite Co.* (1970), 396 U.S. 375, 392, 24 L. Ed. 2d 593, 606, 90 S. Ct. 616, 625). By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads the costs of litigation proportionately among those who will benefit from the fund. *Boeing Co. v. Van Gemert* (1980), 444 U.S. 472, 478, 62 L. Ed. 2d 676, 682, 100 S. Ct. 745, 749; see generally Silver, *A Restitutionary Theory of Attorneys' Fees in Class Actions*, 76 Cornell L. Rev. 656 (1991).

At one time, attorney fees in Illinois common fund cases were awarded based upon a percentage of the amount recovered on behalf of the plaintiff class. (See

*Fiorito*, 72 Ill. 2d at 88; *Leader*, 62 Ill. 2d at 488.) Approximately two decades ago, this court questioned the percentage method of assessing fees and began to follow the Federal courts' approach of using a lodestar method to award attorney fees.

This court's adoption of the lodestar method of awarding attorney fees in class action litigation began in a trilogy of cases commencing with *Flynn v. Kucharski* (1974), 59 Ill. 2d 61. In *Flynn*, the court held that attorney fees were properly awarded for plaintiffs' counsel in class action litigation that challenged the diversion of tax monies from countywide agencies to units of local government. However, this court found that the trial court had not properly considered the various factors that influence the amount of attorney fees that should be awarded to plaintiffs' counsel in class action litigation. The court discerned error in the trial court's failure to give greater importance to the amount of time which plaintiffs' counsel had devoted to the cause, stating,

> "In a case of this kind the fee is not, as it is in the usual contingent-fee case, an amount that has been fixed by voluntary agreement between the client and his attorney. Rather, it is the amount taken, by order of the court, from money that belongs to others. The rights of those others must be carefully considered as well as those of the attorneys. In our opinion the time expended in such a case is not to be relegated to a secondary or minor position; it is a highly significant factor in determining the fee." *Flynn*, 59 Ill. 2d at 66-67.

In both *Leader* and *Fiorito*, this court relied upon *Flynn* to hold that the reasonable hours devoted by plaintiff's attorneys should be the starting point in assessing fees. (*Fiorito*, 72 Ill. 2d at 88-89; *Leader*, 62 Ill. 2d at 488.) The court decided that, to determine an appropriate computation, the reasonable value of the services rendered should be increased by a weighted multiplier representing the significance of other perti-

nent considerations, such as the contingency nature of the proceeding, the complexity of the litigation, and the benefits that were conferred upon the class members. (*Fiorito*, 72 Ill. 2d at 91; *Leader*, 62 Ill. 2d at 489.) The court declined to adopt any set guidelines with respect to the value attributable to these additional considerations and stressed that each case must be considered on its own merits. *Fiorito*, 72 Ill. 2d at 92.

In so ruling, this court criticized the percentage-of-the-recovery method of awarding fees, noting that "[s]uch computation in many cases resulted in exorbitant fees, sparking criticism of courts and of the legal profession. [Citations.]" (*Leader*, 62 Ill. 2d at 488.) The court also expressed its concern that the interests of absent class members should be protected, observing,

"[A]lthough class action attorney's fees are contingent upon success, a class action is not a typical contingent-fee case because the amount of the fee is not the result of a voluntary agreement between the client and his attorney. Rather, the fee is an amount taken, by order of the court, from money that belongs to others, and the amount is dependent upon the exercise of the court's sound discretion." *Fiorito*, 72 Ill. 2d at 87-88.

This court's decisions since *Fiorito* have continued to use and apply this lodestar method of determining attorney fees in class action litigation. (*Lurie v. Canadian Javelin, Ltd.* (1982), 93 Ill. 2d 231, 239 (applying lodestar method, but noting that it "is hardly suited to a case in which a large amount of time has been spent for a disproportionately modest benefit for the class"); *Saltiel v. Olsen* (1981), 85 Ill. 2d 484.) Similarly, our appellate court has followed this court's pronouncements of the lodestar doctrine in *Flynn, Leader* and *Fiorito*. See, *e.g., Langendorf v. Irving Trust Co.* (1992), 244 Ill. App. 3d 70; *Board of Education of the Aptakisic-Tripp School District No. 102 v. County of Lake* (1987), 156 Ill. App. 3d 1064; *Board of Commissioners v. County of Will*

(1987), 154 Ill. App. 3d 395; *DeBruyn v. Elrod* (1983), 121 Ill. App. 3d 290.

The lodestar method of awarding attorney fees adopted by this court in *Fiorito* and its predecessors was utilized in the Federal courts. (See, *e.g.*, *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161 (*Lindy I*), *appeal following remand* (3d Cir. 1976), 540 F.2d 102 (*Lindy II*).) The movement to a lodestar regime was predicated on concerns that "percentage-of-recovery *** sometimes resulted in strikingly large fee awards," generating criticism from the press and those within the legal profession "that the fees were disproportionate to the actual efforts expended by the attorneys." (Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 242 (October 8, 1985) (hereinafter Third Circuit Task Force Report on Attorney Fees).) In the few years following its birth, the lodestar method of *Lindy I* was adopted by many Federal and State jurisdictions, including our own in *Fiorito*. See generally Comment, *Attorney's Fees in Common Fund Actions*, 59 Fordham L. Rev. 843 (1991).

Despite its widespread adoption, the lodestar doctrine has been the object of increasing criticism. Some Federal courts have abandoned lodestar altogether in favor of the percentage method of awarding fees in common fund cases (*Swedish Hospital Corp. v. Shalala* (D.C. Cir. 1993), 1 F.3d 1261; *Camden I Condominium Association, Inc. v. Dunkle* (11th Cir. 1991), 946 F.2d 768), while others have reinstated percentage fee awards as an alternative to lodestar computations and have granted the district court the discretion to use either the lodestar or the percentage method (*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation* (1st Cir. 1995), 56 F.3d 295; *Rawlings v. Prudential-Bache Properties, Inc.* (6th Cir. 1993), 9 F.3d 513; *Florin*

*v. Nationsbank of Georgia, N.A.* (7th Cir. 1994), 34 F.3d 560; *In re Washington Public Power Supply System Securities Litigation* (9th Cir. 1994), 19 F.3d 1291; *Gottlieb v. Barry* (10th Cir. 1994), 43 F.3d 474). Only a few Federal circuit courts have continued to adhere exclusively to lodestar computations in awarding attorney fees from a common fund. (*Longden v. Sunderman* (5th Cir. 1992), 979 F.2d 1095; *Walitalo v. Iacocca* (8th Cir. 1992), 968 F.2d 741.) State-court decisions reflect a similar divergence with respect to the proper formulation. See, *e.g.*, *Kuhnlein v. Department of Revenue* (1995), 662 So. 2d 309; *Bowles v. Washington Department of Retirement Systems* (1993), 121 Wash. 2d 52, 847 P.2d 440 (percentage); *Gigot v. Cities Service Oil Co.* (1987), 241 Kan. 304, 737 P.2d 18 (hybrid between lodestar and percentage).

Plaintiff's counsel suggests that the criticisms leveled against lodestar are legitimate concerns that should prompt this court to reinstate the circuit court's discretion to award percentage-of-the-recovery attorney fees in common fund class action litigation. We agree that the lodestar method of awarding attorney fees from common funds is not without fault. One of the major flaws of the lodestar doctrine is that it creates a disincentive for early settlement of disputes. An attorney who believes that fees will be based on the number of hours devoted to the litigation may be hesitant to settle the matter at an early stage in the proceeding. In addition, an attorney may be more inclined to spend excessive hours on the case and inflate a fee petition in the hopes of increasing the ultimate fee award.

The lodestar method of awarding attorney fees is also open to valid criticism because it may "produce results that are far from homogeneous." (Third Circuit Task Force Report on Attorney Fees at 246-47.) Fees for hourly rates can be set differently by different judges. Evaluating the hours actually expended is a laborious,

burdensome, and time-consuming task that may be biased by hindsight. In addition, determining the reasonable fees to be awarded based upon hourly rates and the reasonable number of hours expended may generate protracted satellite litigation involving the attorney fees award. Moreover, it may be difficult to ascertain the appropriate weighted multiplier to be applied in a given case. As stated in one commentary, "The risk multiplier is little short of a wild card in the already uncertain game of assessing fees under the lodestar calculation." Macey & Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*, 58 U. Chi. L. Rev. 1, 54 (1991).

Although these concerns with respect to lodestar awards of attorney fees are valid, it is also true that percentage attorney fee awards suffer from certain deficiencies. For example, awarding a percentage of the common fund in attorney fees heaps a windfall on plaintiffs' counsel when the damages awarded are high but the costs and length of the litigation were comparatively slight. The appearance of impropriety is most pronounced when the individual claimants will receive only a small amount of the final award. In addition, awarding attorney fees based on a percentage of the recovery may provide an incentive to plaintiffs' counsel to settle cases prematurely rather than continue the litigation. Also, percentage awards may prompt attorneys to be more receptive to representing class members when the issues are relatively straightforward and can be disposed of quickly, and may cause attorneys to decline representation when the issues appear complicated and the litigation protracted.

Bearing in mind all of these considerations, we hold that the circuit court is vested with the discretionary authority to choose the percentage-of-the-award method

or the lodestar method to determine the amount of fees to be granted plaintiffs' counsel in common fund class action litigation. Awarding attorney fees to plaintiffs' counsel based on a percentage of the fund held by the court is, overall, a fair and expeditious method that reflects the economics of legal practice and equitably compensates counsel for the time, effort, and risks associated with representing the plaintiff class. However, because percentage-of-the-fund recovery suffers from certain infirmities, there may be circumstances where the lodestar method will remain the more appropriate method of awarding fees. The decision to award fees based on the lodestar or percentage method is a matter within the sound discretion of the trial court, considering the particular facts and circumstances of each case. As observed in *Rawlings*, 9 F.3d at 516:

> "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved. [Citation.] The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that the district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them."

Neither the lodestar method nor the percentage method is necessarily superior in all instances, and to decree that one or the other shall be used in all circumstances would, in our view, needlessly curtail the trial court's discretionary equitable powers. Judge Richard Curry sapiently and sagaciously expressed a similar rationale in his memorandum decision in Ryan v. City of Chicago (Cir. Ct. Cook Co. December 14, 1992), No. 83—CH—390, slip op. at 21 (mem.):

> "The judge who arrives at a percent of recovery fee is engaged in no higher degree of mysticism than the judge

who satisfies the lodestar by guessing his way through the time and labor component and then subjectively justifies his multiplier. Both must guard against avarice depleting the common fund, both must reward the attorney for excellence, both must be concerned with the credibility of the award and both must be perceived as having achieved a just result."

We believe that the approach we adopt today will permit the circuit court to more fully perform its obligation to ascertain a fee award that justly and equitably compensates plaintiffs' counsel and yet protects the interests of the members of the plaintiff class for whose benefit the common fund was created. By taking into account the unique circumstances of each case in order to exercise its discretionary authority to choose either the percentage or lodestar method of awarding fees, the trial court will be able to protect the interests of absent class members who have not voiced an opinion with respect to the amount of fees to be awarded class counsel.

We decline to adopt the position suggested by the Firemen's Fund, as *amicus curiae,* that there is no principled basis for applying the percentage method in common fund cases as opposed to statutory fee-shifting cases. The United States Supreme Court has held that the lodestar method of computing fees must be used in fee-shifting cases (*i.e.,* where a statute clearly provides for an award to compensate counsel for the prevailing class). (See, *e.g., City of Burlington v. Dague* (1992), 505 U.S. 557, 120 L. Ed. 2d 449, 112 S. Ct. 2638.) However, the Court has not expanded this holding to apply to common funds cases. We believe that fee-shifting cases are materially different from common fund cases, such as the case at bar, most notably because fee-shifting cases do not involve a common fund from which attorney fees may be awarded. Given this critical distinction, we conclude that principles announced by the Court in *Dague* are inapplicable to our present inquiry.

Accord *Swedish Hospital*, 1 F.3d at 1268; *In re Thirteen Appeals*, 56 F.3d at 308.

We further reject the Firemen's Fund's argument that a percentage-of-the-fund recovery is inconsistent with Illinois law and ignores the time and effort devoted by counsel as required by *quantum meruit* principles. Awards of attorney fees in common fund cases are guided by equitable principles similar to those of *quantum meruit*, but are not confined by the precise rules of *quantum meruit*. Indeed, in *Fiorito* and *Leader*, this court permitted the application of a weighted multiplier to determine the amount of attorney fees, although *quantum meruit* principles make no reference to such a multiplier.

In the instant cause, the circuit court denied plaintiff's counsel's motion for attorney fees based on a percentage of the award. The trial court believed its ruling was dictated by this court's ruling in *Fiorito*, which adopted the lodestar method of awarding attorney fees. Because we hold that the circuit court has the discretionary authority to award fees based on a percentage of the recovery, we reverse the rulings of the appellate and circuit courts and remand the matter for further proceedings consistent herewith.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*