FAYE LURIE *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* CANADIAN JAVELIN LIMITED *et al.*, Defendants-Appellants and Cross-Appellees.

First District (4th Division)    Nos. 79-1198, 79-2120 cons.

Opinion filed November 6, 1980.—Rehearing denied January 29, 1981.

Hubachek & Kelly Ltd., of Chicago, for appellants.

William J. Harte, of Chicago, for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Faye Lurie and H. Haskell Lurie, on behalf of themselves and all others similarly situated, and the defendants, Canadian Javelin Limited, William M. Wismer, then president of Canadian Javelin, Limited, and John C. Doyle, founder and owner of the controlling interest of Canadian Javelin Limited, all appeal from an order of the circuit court of Cook County which required the defendants to pay $100,000 in attorneys' fees to the plaintiffs' attorney. The plaintiffs argue that the amount of the award is insufficient. The defendants argue that the trial court's award is excessive. The defendants have also appealed from an order granting fees to the trustee and an order expanding the class. However, these orders are no longer at issue on appeal, because subsequent to the filing of this appeal the defendants have agreed to pay the trustee and the order expanding the class has been vacated.

On December 5, 1973, the plaintiffs filed a four-count class action complaint in the circuit court of Cook County alleging common-law fraud, violation of Illinois securities laws, and violation of Federal securities laws. Two days later, the plaintiffs filed an action in the United States District Court for the Northern District of Illinois against the same defendants as named in this action alleging violation of Federal securities laws.

Two days prior to the filing of the instant action, a similar class action, *Bonime v. Doyle* (S.D.N.Y. 1975), 416 F. Supp. 1372, was filed in the United States Court for the Southern District of New York. The *Bonime* complaint was based upon similar misconduct, brought against the same defendants, and grounded in similar legal theories as the instant action.

The Lurie class was certified in the circuit court on July 16, 1976, 2½ years after the filing of the complaint. On October 12, 1976, the parties filed a stipulation of settlement with the court. The proposed settlement was approved by the court on April 11, 1977.

The scope of the class and the extent of recovery as set forth in the stipulation of settlement was closely tied to the scope of the class and extent of recovery in *Bonime*. The *Bonime* class included, with some exceptions, all persons who purchased Canadian Javelin, Ltd. common stock between April 30, 1969, and October 24, 1973. Pursuant to a settlement which had been approved by the court, the *Bonime* action was dismissed on the merits with prejudice. All persons who did not opt out of the *Bonime* class were enjoined from continued prosecution of the defendants.

The Lurie class was described in the stipulation of settlement as all persons who opted out of the *Bonime* settlement, all persons whose claims were rejected in *Bonime* without proper notice, and all United States

residents except "insiders" who purchased Canadian Javelin, Ltd., common stock between October 25, 1973, and December 19, 1974. According to the stipulation of settlement, Lurie class members entitled to recover would recover the same proportion of his or her loss as is recovered by the plaintiffs in *Bonime*. The *Bonime* plaintiffs are to share in proportion to their losses in a fund consisting of $1,350,000 less attorneys' fees and costs.

The Lurie stipulation of settlement provided further that the defendants would pay the plaintiffs' attorneys' fees. Counsel for the parties were to attempt to agree on the amount of attorneys' fees to be paid, but upon the failure to agree either party could petition the court to set the amount. The court's decision would be appealable but "shall not be reversed or modified unless the court's decision thereon is found to constitute an abuse of the court's discretion."

The parties further agreed that the plaintiffs would move that the action filed in the Northern District of Illinois be stayed. Upon the payment of claims to the Lurie class members, the plaintiffs are to move that the Federal action be dismissed.

In June of 1977, plaintiffs' counsel petitioned for fees totalling $321,454. He sought compensation for 2408 hours of attorneys' time at $125 per hour and 681.8 hours of law clerks' time at $30 per hour. He also requested that a multiplier be applied.

Included in the hours for which the plaintiffs' counsel sought compensation were 375.5 hours of attorneys' time and 66.8 hours of law clerks' time spent in connection with the *Bonime* action. The plaintiffs' counsel had filed objections to the *Bonime* settlement and argued against the approval of the settlement. These objections were ultimately rejected by the *Bonime* court. Counsel's fee petition also included a request for compensation for 181.3 hours of attorneys' time and 45.5 hours of law clerks' time expended in connection with the suit filed in the Northern District of Illinois.

There was a hearing on the fee petition on November 30, 1978. The court determined the reasonable hourly rate to be $75 per hour. This determination is not disputed by either party on appeal. The court determined that the plaintiffs should be compensated for 1850 hours of the 2408 hours requested. The 1850 hour figure was reached by excluding the attorney time and law clerk time expended in connection with the *Bonime* case and Illinois Federal court case and by excluding all of the law clerk hours expended in connection with the instant action. By multiplying $75 per hour by 1850 hours the court determined the "lodestar computation" to be $138,750. The court ordered the defendants to pay $100,000 of the $138,750 lodestar computation.

In making its decision on the fee petition the court discussed several

factors. It noted first that although fees of $321,454 were requested, the total possible recovery to the class if no claim were rejected would be approximately $30,800. The court stated that measured against the small recovery even an award of the full lodestar computation of $138,750 would be "incongruous."

The court stated further, however, that several factors weighed in favor of a large award of attorneys' fees. It noted that the reason the award here was not substantial was because the *Bonime* action had been settled first. Further, the court stated that plaintiffs' counsel had done "an outstanding job" and that the plaintiffs had brought to the attention of the court and the public the fraud perpetrated by the defendants. The court considered also that the plaintiffs obtained an injunction against the future perpetration of such fraud and the deterrent effect of the injunction. Lastly, the court considered that plaintiffs' counsel had to spend such an extraordinary amount of time on this case in part because of improper conduct by the defendants. Weighing these factors together, the court determined that the lodestar figure of $138,750 should be reduced to $100,000.

In considering the plaintiffs' argument that the fees awarded by the trial court were insufficient and the defendants' argument that the fees awarded were excessive, we emphasize that this is not the usual class action attorneys' fees case. Here, it was agreed by the parties as part of the stipulation of settlement that the defendants would pay the plaintiffs' attorneys' fees. The fees were not to be paid, as is usually the case, from the class fund.

The leading case in Illinois concerning the award of fees in class action suits is *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019. The court stated in *Fiorito* that in a class action suit the right to attorneys' fees is contingent upon ultimate success. If the plaintiffs are successful the trial court must determine the number of hours actually expended by counsel and deduct those hours which were the result of unnecessary, duplicative work efforts or inefficiency and those hours which did not benefit the class. That is, the trial court must determine how many of the claimed hours were reasonable and necessary for the prosecution of the action. Once the number of reasonable and necessary hours expended has been determined the trial court must fix a reasonable hourly rate. Reasonable and necessary hours are multiplied by the reasonable hourly rate to reach what is referred to as the "lodestar computation."

Here, the trial court fixed $75 as a reasonable hourly rate, and this determination is not disputed by either party on appeal. The petitioner requested compensation for 2408 hours. The trial court reduced that figure to 1850 hours. This reduction is not disputed on appeal by the

defendants. The petitioner, however, asserts that the trial judge abused his discretion in disallowing the attorney and law clerk time expended in connection with the New York and Illinois Federal court actions and in denying compensation for the law clerk time expended in connection with the proceedings below.

■■ The trial judge, who presided over the cause since the filing of the complaint, determined that the time spent on the two Federal court matters was unnecessary and did not benefit the class. Counsel's objections to the *Bonime* settlement were not successful. Further, the settlement which was accepted by counsel here as fair and reasonable provides for the same proportion of recovery as is recovered by the *Bonime* plaintiffs under the settlement which counsel objected to. Similarly, the Lurie plaintiffs were not successful in the Illinois Federal court action. We believe the trial judge, who was intimately familiar with the intricacies of this complex and lengthy litigation, was within his discretion in disallowing the attorney and law clerk time expended in connection with the New York and Illinois Federal court actions.

■■ We conclude, however, that the trial court abused its discretion in denying compensation for the 569.5 law clerk hours which were expended on work directly connected to the Lurie circuit court action. There is no indication that this time was the result of unnecessary, duplicative work efforts or inefficiency or that the time spent did not benefit the class. We can find no authority for the proposition that time expended by law clerks on an hourly basis for work devoted to a specific case is per se noncompensable. The defendants cite no authority for disallowing the law clerk time expended here. Therefore, the 569.5 hours of law clerk time expended directly in connection with the proceedings below should be included in the lodestar computation. We believe the requested rate of $30 per hour is reasonable.

■■ Thus, the lodestar computation here is $155,830. This figure represents 1850 hours of attorney time at $75 per hour and 569.5 hours of law clerk time at $30 per hour. According to the *Fiorito* analysis, once the lodestar computation is determined that computation is then "adjusted to account for the contingent nature of the undertaking and the benefits conferred upon the class." *Fiorito*, 72 Ill. 2d 73, 91, 377 N.E.2d 1019, 1027.

Concerning the "contingent nature" the court must examine the probability or likelihood of the plaintiff's success at the time the suit was filed, so that the amount of fees awarded will reflect the fact that in some cases the defendant's liability may have been virtually certain while in others the defendant's liability may have been quite remote. The benefits conferred upon the class is a factor because where there is little benefit "each dollar awarded in attorney fees would further reduce the recovery

of the class members." (*Fiorito*, 72 Ill. 2d 73, 92, 377 N.E.2d 1019, 1027.) In examining the benefit to the class, the court may consider noneconomic benefits accruing to the class and to the public.

In determining what adjustment should be made to the lodestar computation here, we first consider the plaintiff's contention that under *Fiorito* the lodestar computation may never be reduced and that therefore the minimum fee that could properly be awarded here is $155,830. In support of this contention the plaintiffs argue that in *Fiorito* the court several times refers to increasing or multiplying the lodestar but does not refer to decreasing it.

However, the court in *Fiorito* did not address the issue of whether the lodestar figure could, under appropriate circumstances, be reduced. In stating the general rule, the supreme court referred to "adjusting" the lodestar. The subsequent references to multipliers and increases reflected that the facts presented in that case warranted an increase of the lodestar.

Further, as noted above, in the usual class action case attorneys' fees are paid from the class fund. Applying the plaintiff's analysis, attorneys' fees could be awarded in an amount larger than the fund from which they are to be paid. We do not believe that *Fiorito*, which involved the payment of attorneys' fees from the class fund, intended such a result.

We next consider the parties' arguments concerning the amount by which the trial court reduced the lodestar computation. The defendants contend that the absolute maximum potential benefit to the class here was only $30,800 and that for this reason it was improper to award fees in excess of $30,800. The plaintiffs contend that there should be no reduction and that in fact a multiplier should be applied because there was great benefit to the class and because the attorneys' fees were to be paid by the defendant and not out of a class fund.

We believe that although the benefit to the class in this case was small, the trial court acted properly in awarding $100,000 as attorneys' fees because of the interrelationship of four factors present in this case. First, this is not a case where the attorneys' fees are to be paid from the class fund. By agreement of the parties the attorneys' fees were to be paid by the defendant and not out of the class fund. One of the reasons that benefits to the class is a consideration in determining attorneys' fees in class action suits is that where there is a small award the courts are reluctant to further reduce the recovery of the class members by a large award of fees. (*Fiorito*, 72 Ill. 2d 73, 92, 377 N.E.2d 1019, 1027.) Therefore, where the defendant has agreed to pay the plaintiffs' attorneys' fees, the amount of fees recoverable is not so strictly constrained by a consideration of "benefit to the class" or size of the class fund as is the case where fees are to be paid from the class fund. Second, this case does involve some measure of noneconomic benefit. An injunction was issued against

the defendants, and, given the lengthy history of repeated securities fraud by the defendants, we believe the injunction is of some importance. Third, the small recovery here was a result of unusual circumstances. The claim here as originally filed was quite substantial and the plaintiffs succeeded in establishing liability. It was the rather fortuitous circumstance of the *Bonime* case being settled prior to this case which resulted in there being a small number of class members and thus a small award of damages. Finally, as noted by the trial judge, plaintiffs' counsel expended a large amount of time on this cause in part because of the defendants' improper conduct.

■■ While a consideration of the above factors is justification for not reducing the lodestar computation to below $30,800, these factors are not sufficient to warrant the application of a multiplier or the award of the full lodestar computation. While the size of the fund has reduced significance here because the attorneys' fees are not to be paid out of that fund, the small recovery to the class is a factor under *Fiorito* and may not be ignored. Therefore, we believe that in light of the small recovery to the class the trial court was warranted in reducing the lodestar computation to $100,000 and in not applying a multiplier. The trial court's order awarding $100,000 for attorneys' fees is proper notwithstanding our determination that the lodestar computation is $155,830 rather than $138,750.

For the foregoing reasons the order of the trial court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.