EFFIE WATERS *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO, *et al.*, Defendants.—(Amelia Andrejewski *et al.*, Plaintiffs, *v.* THE CITY OF CHICAGO, *et al.*, Defendants.—Dorothy Epstein *et al.*, Objectors-Appellants.)

First District (2nd Division)   No. 81—2855

Opinion filed December 14, 1982.—Rehearing denied January 11, 1983.

Arvey, Hodes, Costello & Burman, Asher, Goodstein & Pavalon, Cooney and Stenn, and Tully, Roddy, Weinstein & Boyle, all of Chicago (Nathan M. Cohen, Stephen J. Feinberg, Eugene I. Pavalon, Patrick J. O'Connor, and Joseph V. Roddy, of counsel), for appellants Dorothy Epstein, Barbara Nash Wilson, Clemen Sherman Williams, and Cooney and Stenn.

Judge, Kurnik & Knight, Ltd., and Larry D. Drury, Ltd., both of Chicago (Jay S. Judge, William W. Kurnik, Byron D. Knight, Gregory Lawton, and Larry Drury, of counsel), for appellees Effie Waters and John R. Nebel, Jr., *et al.*

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

A plaintiff class comprised of all tort judgment creditors of defendant city of Chicago who hold judgments that were entered prior to November 16, 1979, and who had not assigned their judgments as of that date, brought an action seeking relief from the city's practice of postponing the payment of tort judgments of over $1,000 for an extended period of time. A settlement of the action was approved by the trial court on October 20, 1981. A group of class members who filed objections to the settlement in the trial court appeals, contending that: (1) the notice to the class of the proposed settlement was defective; (2) the award of fees to the class attorneys was an abuse of the trial court's discretion; and (3) the trial court erred in denying the objector's motion to intervene and in dismissing a separate complaint brought by certain objectors.

This is the third time that this matter has been before this court. In 1975, plaintiff John Nebel filed a class action which sought relief from the city's practice of postponing the payment of tort judgments

of over $1,000 for extended periods of time. The trial court dismissed the complaint, and we reversed. (*Nebel v. City of Chicago* (1977), 53 Ill. App. 3d 890, 369 N.E.2d 74.) On remand, the action was consolidated with plaintiff Effie Waters' similar class action. The trial court approved a settlement of the cause over the objections of several class members and objectors appealed. In *Waters v. City of Chicago* (1981), 95 Ill. App. 3d 919, 420 N.E.2d 599, we vacated the settlement agreement, holding that the assessment of 1.3% of all judgments held by class members for payment of attorney and trustee fees was unfair to those class members who held judgments for less than $1,000. Those plaintiffs received no benefit from the acceleration of payments which resulted from the settlement because the city's policy prior to the agreement had been to pay judgments of $1,000 or less as soon as possible after they were presented for payment, and payment of those judgments would usually be made in the same fiscal year as the entry of the judgment. Holders of larger judgments had had to wait up to 52 months to obtain payment of their judgments. We also expressed doubts as to the fairness of the settlement as it applied to holders of judgments which were nearly 52 months old, since the holders of those judgments were informed of their right to opt out of the class, and given instructions on how to do so, but were not informed of the consequences attaching to a decision to opt out of or remain included in the class. We regarded this deficiency of notice as significant because holders of older judgments would have been paid just as quickly in the normal course of payment, and the priority of payment given to class members under the settlement would have given them no benefit in return for the deduction of 1.3% of their judgments for payment of attorney fees. (95 Ill. App. 3d 919, 925 n.5.) We also stated that the trial court made insufficient findings of fact in its award of $100,000 in fees to both of the class attorneys in that the court failed to give careful scrutiny to the hourly fee requests of the attorneys and made no findings of fact to justify the application of a multiplier to those hourly totals. 95 Ill. App. 3d 919, 926-27.

Shortly after this court's mandate was filed, proceedings were instituted in the trial court to gain that court's approval of a modified settlement of this case. The modified settlement was in essentially the same form as the vacated settlement. The class was defined as "all unpaid tort judgment creditors as of November 16, 1979, of the defendant, City of Chicago, but the class shall exclude all persons who have sold or assigned their judgments as of November 16, 1979." The proposed settlement also provided that no deductions for attorney or trustee fees would be assessed from judgments for less than $1,000.

On July 13, 1981, the trial court approved a notice to the class of the hearing on the modified settlement. This notice detailed the settlement and contained instructions on filing objections. The notice did not inform the class members of their right to opt out of the class.

On July 20, 1981, the court granted the city's motion to dismiss the complaint of Amelia Andrejewski. That complaint was filed as a class action on behalf of members of the *Waters* class who had been paid their judgments less a 1.3% deduction for fees pursuant to the vacated settlement. The complaint sought a refund of the deductions.

In August 1981, the court received objections to the settlement from objectors here, and supplemental petitions for fees were filed by the plaintiff's attorneys.

On October 20, 1981, the trial court entered its order approving the modified settlement. In that order the court recited findings of fact on the issue of attorney fees, approving hourly fee requests, or lodestar figures, of $53,700 for attorney Byron Knight and $57,200 for attorney Larry Drury. The court applied multipliers of 1.87 to the former figure and 1.75 to the latter. The total awards approved by the court were $100,419 to attorney Knight and $100,100 to attorney Drury. The city was ordered to continue deducting 1.3% from all judgments over $1,000 payable to class members. That money was to be held in a settlement fund for the payment of attorney and trustee fees.

Objectors appeal from that order. During the pendency of this appeal, trustee Sheldon Garber's seventh report was filed as a supplement to the record. That report indicates that at this time, all class members have been paid their judgments less deductions, and that virtually all those judgment creditors who opted out of the class have been paid the full amount of their judgments.

■ The threshold question in this case is whether, as plaintiffs contend, this case is moot because of the fact that all class members have received payment of their judgments. This question is easily answered because the issue in this case has never been the right of the class members to receive payment of their judgments, but rather the propriety of the terms of the settlement and the notice of settlement to the class. The class members have had 1.3% of their judgments deducted for the payment of attorney fees, and objectors contest the propriety of the settlement embodying that deduction. Therefore, a contention that all actual controversy between the parties has been resolved is meritless.

Objectors' first contention on appeal is that the notice to the class of the proposed settlement was defective, and the settlement was

therefore unfair, because class members were not apprised of the possible benefits to them that might result from opting out of the class.

In *Waters*, we held that the original settlement was unfair to class members holding judgments for $1,000 or less because the settlement did not benefit them and the notice failed to inform them that they would receive no benefit from remaining in the class. With regard to the notice, we stated that:

> "This defect of notice also raises questions concerning the fairness of the settlement to absent class members holding judgments greater than $1000. While the notice adequately informed class members of their right to opt out, and provided clear instructions on the method of opting out, the notice did not reveal the consequences of opting out, and thus necessarily failed to give class members a basis for evaluating their two options. Even though the settlement gave most class members a *quid pro quo* (accelerated satisfaction in return for a 1.3% reduction), fairness might dictate that a class member's decision to remain in the class be a fully informed one. In particular, creditors whose judgments were already 52 months old in February 1980 had no way of knowing that remaining in the class would be of no benefit. When one of the objectors' attorneys pointed out this fact to the trial court, he was rebuffed." 95 Ill. App. 3d 919, 925 n.5.

The notice of the modified settlement, which was approved by the trial court on July 13, 1981, contains no information concerning the right of the class members to opt out of the class. This notice ensures that any class member who chose to remain in the class because of the inadequacy of the information contained in the prior notice would remain bound by that choice.

Also germane to the ability of the class members to evaluate the benefits of participating in this action is the conspicuous lack of information in both settlement notices regarding the posture of the case of *Evans v. City of Chicago* (N.D. Ill. 1980), 522 F. Supp. 789, *aff'd* (7th Cir. 1982), 689 F.2d 1286. In that case, two classes of plaintiffs brought actions in the United States District Court for the Northern District of Illinois against the city raising constitutionally based challenges to the same practices as those complained of here. The group of judgment creditors affected by that action essentially includes all members of the class here except for those members of the *Waters* class who are assignees of judgments. On January 19, 1981, Judge Grady entered his final order in *Evans*, granting the plaintiff class a summary judgment and ordering the city to make immediate payment

of all outstanding judgments, costs, and unwaived statutory interest owed to class members. Attorney fees were assessed against the city under 42 U.S.C. sec. 1988 (1976). Enforcement of that order was stayed pending appeal, and the order was affirmed on September 27, 1982, after the case had been briefed and argued twice before the Seventh Circuit Court of Appeals.

As a matter of hindsight, no member of the *Waters* class could have benefited from the final disposition of the *Evans* case because all class members here had received payment of their judgments by the time the judgment in *Evans* became enforceable. However, the class members here were never informed by the class attorneys that they might be members of the *Evans* class, nor were they informed of the possibility that the disposition of that case might entitle them to accelerated payment without a deduction for attorney fees.

■■■ As was noted in our prior opinion, a class action settlement must be " 'in the best interest of all those who will be affected by it.' " (*Waters v. City of Chicago* (1981), 95 Ill. App. 3d 919, 924, quoting *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 316, 335 N.E.2d 448.) The deficiencies in the notice in the instant case, particularly the absence of an opt-out provision and the failure to explain the alternative courses of action which were available to the class members, makes the modified settlement of this case unfair. Proper notice to class members is essential to their right to due process. (*Cf. Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 15, 428 N.E.2d 478, *appeal dismissed* (1982), 456 U.S. 914, 72 L. Ed. 2d 173, 102 S. Ct. 1767 (holding that the due process rights of class members who are not residents of the jurisdiction where the suit is brought are sufficiently protected by notice and adequate representation).) Sections 7(b)(2) and (3) of the Uniform Class Action Act specify that the inclusion of information in the notice regarding the possible financial consequences of participation in the class action and the right to opt out is a prerequisite to proper notice to the class. (See Ill. Ann. Stat., ch. 110, par. 57.4, Historical and Practice Notes, at 158 (Smith-Hurd Supp. 1982).) Although section 57.4 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57.4, superseded without change of substance by section 2—803 of the Code of Civil Procedure) leaves the contents of the notice to the class to the discretion of the trial court, we hold that the approval of this notice, from which so much significant information is omitted, was an abuse of that discretion. The settlement which followed the defective notice therefore must be vacated.

Our vacation of the modified settlement raises a question regard-

ing the propriety of any award of attorney fees on remand. As in our last disposition of this case, the vacation of the settlement would seem to effectively destroy the "success" and the "fund" elements which are required to support an award of attorney fees in a class action. (See 95 Ill. App. 3d 919, 926.) The last payments to class members by the city have been made, pursuant to the settlement, during the pendency of this appeal. If the "success" required to justify an award of attorney fees is regarded as prosecuting a case to a final disposition of the controversy by judgment, no such "success" is possible on remand, because the payment to the class members brought the original controversy to an end. In the strictest sense, the prior settlements of this case are of no effect, and the case can not be successfully concluded by plaintiff's attorneys because the passage of time has ended the controversy.

However, the unusual circumstances presented by this case leads us to adopt a more flexible view of the "success" requirement. Although the two settlements of this case have been vacated, the city budgeted $9 million for the payment of outstanding tort judgments in the years 1980, 1981, and 1982 as required by the settlements. The class members received an acceleration in the payment of their judgments as a result. Therefore, the class attorneys have achieved some success by their prosecution of this action, and the fact that any order that could be entered on remand with regard to the plaintiff's claims could only direct the city to do what it has already done should not preclude an award of attorney fees.

However, the fund which was originally contemplated as the source of attorney and trustees fees has vanished. That fund was the increased city appropriations for the years 1980, 1981, and 1982. Those funds, presumably, have been all but completely disbursed. The fund which must now be viewed as a source for a newly fashioned fee award is the settlement fund of 1.3% of the paid judgments which was collected by the city.

Objectors next contend that the awards to the two attorneys were improper in amount. Although the vacation of the settlement, as in *Waters*, makes it unnecessary to reach this argument, the manner in which the trial court fashioned the fee awards prompts us to afford the trial court specific guidance as to the amount of an appropriate award on remand.

In *Waters* we noted that the trial court erred in its award of fees in the first settlement of this case. The attorneys presented the trial court with petitions representing that their hourly rate charges for the work performed on behalf of the class were $49,326.66 for attor-

ney Knight and $65,000 for attorney Drury. The trial court, without comment in the record, awarded each a fee of $100,000. We reviewed the requirements for fixing class action attorney fees set forth in *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 89-93, 377 N.E.2d 1019:

> "The trial court first considers the number of hours expended by the attorneys. After disallowing time spent that did not benefit the class, the trial court determines whether the hourly total is reasonable, and notes whether the time has been expended by law clerks, associates, or senior partners. The trial court then considers the complexity of the problem and the skill of the attorneys, and fixes an hourly rate of compensation. The hourly rate, multiplied by the allowable hours, is called the 'lodestar computation,' because it provides the point of orientation for determining the final fee award. (See *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161, 168.) The lodestar computation can then, at the discretion of the trial court, be adjusted by a multiplier. The application of a multiplier depends on two factors: the contingent nature of the class' recovery (an unlikely recovery justifying an increased fee), and the quality of the benefit to the class. The supreme court in *Fiorito* specified that, if the trial court is to award fees greater than the lodestar computation, it should identify the factors that merit the increase, and state the value of the multiplier applied. 72 Ill. 2d 73, 93." 95 Ill. App. 3d 919, 926.

This court then noted that the trial court erred in fixing the fee award by failing to scrutinize the hourly rate totals and to disallow hours spent that did not benefit the class and by failing to make and include in the record specific findings of facts which would justify the use of a multiplier.

In fixing the instant award of fees, the trial court made findings of fact concerning the allowable hours and hourly rates of the two attorneys. The court approved 716 hours at $75 per hour for attorney Knight and 572 hours at $100 per hour for attorney Drury. The resulting lodestar figures were $53,700 for attorney Knight and $57,200 for attorney Drury. The court applied multipliers of 1.87 to the former award and 1.75 to the latter, yielding total awards of $100,419 to attorney Knight and $100,100 to attorney Drury.

■ The trial court's calculation of the lodestar figures disallowed time requests for the defense of the prior appeal of this case and for "estimated time to complete the litigation." Both of these requests were from attorney Drury. However, the court did not disallow attor-

ney time spent monitoring the progress of the *Evans* case. The benefit accruing to this class from the expenditure of that time is tenuous at best, especially in light of the benefits that some class members might have expected to receive had they been notified concerning the progress of that case. We do not, however, view the trial court's calculation of the lodestar figure as an abuse of discretion.

■ We do find that the use of a multiplier in this case is an abuse of discretion. Under *Fiorito*, the lodestar figure may be adjusted to account for the "contingent nature of the undertaking and the benefits conferred upon the class." 72 Ill. 2d 73, 91.

Here, there is no contingency as to the right of the class members to receive payment of their judgments. The only contingency involved in this case is to the right of the class members to receive an accelerated payment of those judgments. The contingent nature of the undertaking is examined in light of the probability of the plaintiff's success at the time that the suit was filed. (*Lurie v. Canadian Javelin Ltd.* (1981), 92 Ill. App. 3d 15, 19, 415 N.E.2d 1055.) Therefore, the indications that appear in the record that the city was prepared to budget increased appropriations for the satisfaction of tort judgments prior to the beginning of any settlement negotiations cannot affect the evaluation of the contingent nature of the suit, and it must be concluded that the success of the plaintiff class was not at all certain at the time that the suit was commenced.

As has been previously noted, the benefit which accrued to the class as a result of this litigation is somewhat difficult to evaluate. Because the city's proposed budget for 1980 contained the same appropriation for payment of judgments which was later required by the original and modified settlements, it is arguable that those class members who received payment or "moved up the list" of those to be paid in that year did not benefit from this suit. This inference applies to any acceleration received in 1980 even if it were assumed that the city would reduce appropriations back to their former levels in 1981 and 1982, the other years covered by the settlement.

Additionally, the trial court posited at 9% differential between the statutory rate of interest due the class members (6%) and the rate available on the open market (15%) in evaluating the value of the acceleration. The members of the class holding older judgments clearly received less benefit from this differential than those class members holding more recent judgments, simply because they received less acceleration of payment when the "time lag" in payment was compressed from 52 months to 28 months (the current estimated time for payment). The entire benefit to some class members was undoubtedly

consumed by the 1.3% deduction for fees.

Although some members of the class received concrete benefits from the operation of the vacated settlements, some class members may have been actually disadvantaged by participation in the action. This possibility militates against the application of a multiplier, especially when viewed in light of the deficiencies of notice which made it impossible for those class members who were benefited least to evaluate the consequences of remaining in the class. We therefore find that the application of the multipliers in this case is an abuse of discretion because of the insubstantiality of the benefit to the class as a whole resulting from this action.

We note that the multipliers themselves are unusual, and raise a question regarding the factors which were considered by the trial court in fashioning them. In the original settlement, the court awarded $100,000 to each attorney without comment. In the modified settlement, the court made findings of fact which have been previously noted and fashioned multipliers of 1.75 and 1.87. When applied to the lodestar for each attorney, these multipliers yielded awards which were negligibly different from the original awards, which we had specifically found to be improperly fashioned. We regard the use of these curious multipliers as an abuse of discretion because of the strong inference that they raise that the primary impetus in devising them was the justification of the original fee awards.

No question has been raised by the objectors as to the award of fees to the trustee who oversaw the implementation of the settlements, and we find that the trial court's findings as to the reasonable value of the trustee's services are not against the manifest weight of the evidence.

The objectors also contend that the trial court erred in dismissing the complaint brought by class members who had been paid pursuant to the prior vacated settlement seeking a full refund of the fees deducted from the amount of their judgments, and that the trial court erred in denying the petition of the objectors for leave to intervene.

In *Waters*, we held that the objectors did not occupy the status of intervenors as of right, and that denial of their prior petition to intervene was not an abuse of discretion, especially in light of the fact that a request to opt out would have served their interests equally well. (95 Ill. App. 3d 919, 923-24.) The same analysis applies to the complaint and the petition here, and we hold that denial of the petition and dismissal of the complaint were not abuses of the trial court's discretion.

For the reasons expressed herein, the trial court's order approv-

ing the settlement agreement is vacated and the cause is remanded with directions to the trial court to:

(1) fashion an award of attorney fees without the use of a multiplier and without allowing fees for the defense of this appeal, and otherwise consistent with the views expressed herein;

(2) approve an award of trustee fees in the amount awarded in the vacated settlement order;

(3) order plaintiffs' attorneys to deposit with the city any excess fees which have already been disbursed to them pursuant to the vacated settlements, in order that such excess fees may be refunded to the members of the plaintiff class; and to

(4) order the city to refund to the class members all excess deductions from the amount of their judgments which were made for the payment of fees pursuant to the vacated settlements.

Vacated and remanded with directions.

DOWNING and PERLIN, JJ., concur.