(No. 54641.—

FAYE LURIE *et al.*, Appellees and Cross-Appellants, v. CANADIAN JAVELIN LIMITED *et al.*, Appellants and Cross-Appellees.

*Opinion filed December 17, 1982.*

SIMON, J., took no part.

Roger J. McFadden and Margaret Maxwell (Hubachek & Kelly, Ltd., of Chicago, of counsel), for appellants and cross-appellees.

William J. Harte, of Chicago, for appellees and cross-appellants.

JUSTICE WARD delivered the opinion of the court:

This appeal involves the propriety of an award of $100,000 in attorney fees in a class action suit in the circuit court of Cook County. There was a stipulated settlement, under which the class of 12 members recovered approximately $3,000. Under the stipulation the defendants agreed to pay reasonable attorney fees in addition to the damages recovered by the class. The appellate court affirmed. (92 Ill. App. 3d 15.) The defendants were given leave to appeal and contend that the award is excessive in light of the size of the damages recovered by the class. The plaintiffs cross-appealed, contending that the attorney fees should have been greater to reflect the substantial amount of time expended and the involved character of the litigation.

Six volumes of the seven-volume record were lost between the time of the filing of the appellate court's opinion and the oral argument before us. Consideration of the issues had to be deferred until the record could be reconstructed by the parties. The clerk of this court has been provided with a condensed two-volume record by the parties, which contains the materials they consider to be necessary for a determination of the questions presented.

On December 5, 1973, the plaintiffs, Faye and H. Haskell Lurie, on behalf of themselves and all others similarly situated, filed a four-count class action complaint in the circuit court of Cook County (hereafter, *Lurie I*) against the defendants, Canadian Javelin Limited (Javelin), William M. Wismer, and John C. Doyle. Wismer was the president and a director of Javelin. Doyle was the founder, a director, the chief executive officer, and the owner of a controlling interest in Javelin's stock. The complaint alleged common law fraud, violation of section 12 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, par. 137.12), and violations of sec-

tions 5 and 17(a) of the Securities Act of 1933 (15 U.S.C. secs. 77e, 77q(a) (1970)). The Luries purported to represent all purchasers of Javelin stock in the period from November 1, 1969, to December 5, 1973, the date of the filing of the complaint.

On the same day, the plaintiffs filed another suit (*Lurie II*) against the defendants in the United States District Court for the Northern District of Illinois, alleging violations of the Securities Exchange Act of 1934 (15 U.S.C. sec. 78a *et seq.* (1970)), under which Federal courts have exclusive jurisdiction (15 U.S.C. sec. 78aa (1970)). The complaint in *Lurie II* was based on the same conduct of the defendants as was alleged in the Luries' State court action. The district court stayed proceedings in *Lurie II* until the State court proceeding would be concluded.

On December 3, 1973, two days before the filing of the Luries' suits, a similar class action against the defendants, *Bonime v. Doyle* (S.D.N.Y. 1976), 416 F. Supp. 1372, was filed in the United States District Court for the Southern District of New York. The *Bonime* plaintiffs claimed representation of the class of Javelin shareholders who purchased shares during the period between April 30, 1969, and October 25, 1973. (By order of the Securities and Exchange Commission (SEC), trading in Javelin stock in domestic markets was halted on October 25, 1973.)

In October of 1973, prior to the filing of the suits we have described above, the SEC brought a suit against Javelin, Wismer, and Doyle. (*Securities Exchange Com. v. Canadian Javelin Ltd.* (S.D.N.Y. July 17, 1974) [1974-1975] Fed. Sec. L. Rep. (CCH) par. 94,720.) The SEC's complaint made allegations similar to those in the subsequent *Bonime* and *Lurie* suits and prayed for a permanent injunction and other relief. On March 29, May 29, and July 17, 1974, three separate consent decrees were

entered in the SEC action, which enjoined the defendants from engaging in any of the activities complained of and from participating in any future activities which would operate as a fraud on any purchaser of Javelin securities.

It appears that Doyle is no stranger to legal proceedings. According to the record, Doyle was convicted of Federal securities violations in Connecticut in 1965. When his conviction was affirmed (*United States v. Doyle* (2d Cir. 1965), 348 F.2d 715), he fled to Canada, where he successfully resisted extradition.

In 1976, Canadian authorities brought charges of fraud against Doyle and four others involving common stock of Javelin. It is said that upon the filing of these charges, Doyle fled to and presently resides in Panama. The plaintiffs' brief states that all of the assets of Canadian Javelin have been removed from the United States.

The *Bonime* action proceeded more expeditiously than *Lurie I*, and in April of 1974 the *Bonime* plaintiffs moved for class certification. On February 7, 1975, the *Bonime* class was certified. It comprised all purchasers, with exceptions not relevant here, of Javelin shares between April 30, 1969, and October 24, 1973. When the parties in *Bonime* submitted a stipulation of settlement on July 9, 1975, the Luries' attorney, who also represented three of the class members in *Bonime*, unsuccessfully objected to the proposed settlement. The settlement, which was approved on July 26, 1976, provided that the members of the *Bonime* class would receive $1,350,000, less attorney fees of $260,000 and costs. The *Bonime* action was later dismissed on the merits with prejudice.

Meanwhile, the *Lurie I* plaintiffs had moved for class certification. Extensive briefs were filed by both parties on the question. In July 1976 the court granted the plaintiffs' class-certification motion and issued a 31-page

memorandum opinion. The class was to include all those who acquired Javelin common stock in the period from November 1, 1969, to December 19, 1974. When the *Bonime* settlement was approved in New York 1½ weeks later, the *Lurie I* class had to be reduced to include only those who were not included within the definition of the *Bonime* class or who opted out or were rejected, without a requested hearing, from being included within the *Bonime* class.

On October 12, 1976, the parties in *Lurie I* submitted to the court a stipulation of settlement under which each member of the *Lurie I* class was to receive the same proportional recovery of their loss as that which was received by members of the *Bonime* class. Therefore, the size of the class recovery could not be determined until the size of the *Lurie I* class and the proportional recovery by the *Bonime* class were calculated. The defendants additionally agreed in the stipulation to pay attorney fees to the plaintiffs' counsel and certain litigation expenses. The stipulation also provided: "The amount of attorneys' fees to be awarded plaintiffs' counsel in this action shall not, in any manner, be based, directly or indirectly, upon the result obtained or benefit conferred upon the Bonime Class in the *Bonime* case." If the parties were not able to agree on the amount of attorney fees, the stipulation provided that either party could petition the court to set the fees. The court's decision as to the amount of fees to be paid to the plaintiffs' counsel was not to be reversed or modified unless the court's decision was found to constitute an abuse of discretion. The stipulation provided for the dismissal of both the *Lurie I* and *Lurie II* actions.

Over 2,500 claims by shareholders of Javelin were filed, but most of these claimants were excluded because they were within the *Bonime* class. Of the remaining claims the trustee appointed by the trial court deter-

mined that only 12 claimants were within the *Lurie I* class. The service of the trustee continued to 1979. The court ordered payment of $48,800 to the trustee for his services. The trustee was appointed by the court, and remuneration for his services was, of course, not to be on a contingent basis.

As the parties were unable to agree on the amount of fees to be paid to the plaintiffs' attorneys, that question was submitted to the trial court. The plaintiffs' counsel asked for fees totaling $321,454. Compensation for 2,408 hours of attorneys' time at $125 per hour and 681 hours of law clerks' time at $30 per hour was requested. After briefs had been filed and considered, the court calculated a lodestar figure for attorney fees of $138,750 by multiplying the number of hours spent by the plaintiffs' counsel in the litigation by $75, the hourly rate fixed by the court. The court, however, announced that an award for the lodestar figure as calculated would be incongruous considering the amount of the recovery by the class, and it made a fee award of $100,000. The court later denied the defendants' motion to reduce and the plaintiffs' motion to increase the award. On October 29, 1979, the court entered an order allowing the plaintiffs' counsel interest on the award at the annual rate of 8% *nunc pro tunc* as of December 1, 1978, the date of the award of attorney fees.

The fee award in *Lurie I* did not cover services by the plaintiffs' attorney in *Lurie II* or in *Bonime*. The award was solely for services in *Lurie I*. The plaintiffs' attorney requested reimbursement for expenses in the amount of $13,626.72, and on October 3, 1978, the court ordered reimbursement in the amount of $10,600. On October 27, 1978, the trial court ordered interim attorneys' fees in the amount of $10,000 to be paid to the plaintiffs' attorney. The amounts for reimbursement and for interim fees were paid by the defendants in Novem-

ber 1978. The trial court's order of December 1, 1978, ordered the payment of the balance of the fee award due the plaintiffs' attorney, that is, $90,000.

We would note that motions the defendants made to dismiss or, in the alternative, to stay the proceeding in *Lurie I* were denied by the trial court. It is stated by the plaintiffs' attorneys that as of the time of this appeal the members of the class had not been paid the damages agreed upon in the settlement stipulation.

The appellate court, on appeals by the defendants and the plaintiffs on the amount of fees, held that the lodestar figure should be increased by crediting time for the plaintiffs' attorneys' law clerks at an hourly rate of $30 but, as has been stated, considering the size of the recovery by the class, the court affirmed the award of fees in the amount of $100,000. (92 Ill. App. 3d 15.) We granted the defendants' petition for leave to appeal. 73 Ill. 2d R. 315.

This court's decisions in *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, *Leader v. Cullerton* (1976), 62 Ill. 2d 483, and *Fiorito v. Jones* (1978), 72 Ill. 2d 73, illustrate that in this State attorney fees in class action cases typically are to be determined by use of a "lodestar computation" method. As the appellate court noted, however, this is not the typical class action case where attorney fees are to be paid from the class fund, thereby reducing each class member's proportional share of the recovery. Here, in the settlement stipulation the defendants agreed to pay reasonable attorney fees in addition to the agreed-upon class-recovery amount. That the defendants agreed in the absence of a class fund to pay reasonable attorney fees does not mean, however, that the size and character of the benefit to the class through the class action suit can be ignored. The benefit to the class, whether monetary or nonmonetary or both, is of major importance in determining the amount of attorney fees to be awarded.

In *In re Clark Oil & Refining Corp.* (E.D. Wis. 1976), 422 F. Supp. 503, 511, the court said: "[T]he beneficial result achieved, is to the Court's mind the most important area to be evaluated in considering the question of reasonable attorneys' fees in this matter. In taking this position, the Court echoes the view of Judge Decker who, in speaking of the benefits conferred upon class members, stated: 'There is no better test than this of the efficacy of the services rendered.' *State of Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221, 224 (N.D. Ill. 1972)." And in *In re King Resources Co.* (D. Colo. 1976), 420 F. Supp. 610, 630, the court said:

> "In awarding attorney fees in class actions the courts have cited 'the value of the settlement,' *Derdiarian v. Futterman Corp.*, 254 F. Supp. 617, 620 (S.D.N.Y. 1966); 'the amount recovered,' *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 480 (S.D.N.Y. 1970) and *Perlman v. Feldmann*, 160 F. Supp. 310, 311 (D. Conn. 1958); 'the results achieved' for the class, *Philadelphia Elec. Co. v. Anaconda Amer. Brass Co.*, 47 F.R.D. 557, 559 (E.D. Pa. 1969); '[t]he result of the case, because that determines the real benefit to the client,' *Rogers v. Hill*, 34 F. Supp. 358, 363 (S.D.N.Y. 1940)."

*Cf. Bonner v. Coughlin* (7th Cir. 1981), 657 F.2d 931.

Too, it should be recognized that the lodestar-computation method is hardly suited to a case in which a large amount of time has been spent for a disproportionately modest benefit for the class. See Mowrey, *Attorney Fees in Securities Class Action and Derivative Suits*, 3 J. Corp. L. 267, 342 (1978).

A court of review should not vacate an award of attorney fees without a showing of an abuse of discretion by the trial court in making the award. (*Illinois v. Sangamo Construction Co.* (7th Cir. 1981), 657 F.2d 855; see also *Leader v. Cullerton* (1976), 62 Ill. 2d 483.) Although an award of attorney fees in excess of the damages awarded or agreed upon is not necessarily precluded (*Morning Pio-*

*neer, Inc. v. Bismarck Tribune Co.* (8th Cir. 1974), 493 F.2d 383; see also *Perez v. University of Puerto Rico* (1st Cir. 1979), 600 F.2d 1, 2 n.2), we consider that an award of $100,000 here was inappropriate and an abuse of discretion.

The appellate court correctly observed that the "benefit to the class *** was small." (92 Ill. App. 3d 15, 20.) The class itself was small—12 persons. The amount agreed upon to be recovered by the 12 members of the class represented only approximately 16½% of their claimed losses. The award of fees incongruously was 33 times greater than the amount to be recovered by the class. The nonmonetary benefits to the class were not significant. The consented-to injunction represented only a formal benefit in light of the consent decrees against the defendants that had been secured earlier by the SEC. There was no admission of liability by the defendants through *Lurie I.* The stipulation of settlement specified that it was not to be considered an acknowledgment of liability. Nor did the *Lurie I* litigation have precedential value, which may be advantageously considered in appraising the value of legal services and the setting of fees. (See *Sprogis v. United Airlines, Inc.* (7th Cir. 1975), 517 F.2d 387.) *Lurie I* and its result were simply a parallel to *Bonime v. Doyle.* That the two actions were filed almost simultaneously may have been entirely coincidental. The record does not show whether the plaintiffs' attorney had foreknowledge of the planning and filing of *Bonime,* nor does it show whether the attorneys in *Bonime* were aware of the planning and filing of the Lurie class actions.

The primary purpose of the litigation was, of course, to recover substantial monetary damages for shareholders of Javelin. The success of *Lurie I* in this regard was obviously extremely limited. This does not reflect adversely on the efforts of plaintiffs' counsel, for the trial court spoke in highly laudatory terms of his professional abilities and in-

dustry. The hours spent by the plaintiffs' attorney and the rates of compensation set by the circuit and appellate courts are not disputed. We have noted earlier that an award of attorney fees in excess of the recovery by the class members may be defensible, but under all of the circumstances here the agreed-upon recovery of $3,000 for the class cannot justify attorney fees of $100,000. The awarding of 33 times the amount of the award to the members of the class must be regarded as an abuse of discretion.

The absence of the full record makes it advisable that the cause be remanded for the taking of further evidence, if necessary, or for a further reconstruction of the record.

For the reasons given, the award of attorney fees is vacated and the cause is remanded to the circuit court of Cook County for reconsideration of the amount to be awarded as attorney fees.

*Judgment vacated; cause*
*remanded, with directions.*

JUSTICE SIMON took no part in the consideration or decision of this case.